

**IN THE**
**TENTH COURT OF APPEALS**

**No. 10-19-00030-CR**

**JUDE SHAWN VAUGHN, JR.,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 40th District Court**
**Ellis County, Texas**
**Trial Court No. 44254CR**

**MEMORANDUM OPINION**

In one issue, Appellant Jude Shawn Vaughn, Jr. challenges the sufficiency of the evidence to support his conviction. The evidence at trial established that seventeen-year-old Gabriel Richie was shot and killed while being robbed of marijuana by Vaughn and Vaughn's accomplice, Trevis Baudoin. Vaughn was indicted for capital murder and felony murder. A jury found Vaughn guilty of felony murder and assessed a sentence of life imprisonment. We will affirm.

*Discussion*

A. Standard of Review.  The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).  This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.  We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232.  Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319, 99 S.Ct. 2781); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).  We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).  This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).  Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

> We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately

describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

B. Murder. A person commits murder if he

commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE ANN. § 19.02(b)(3). Murder under this statute is known as "felony murder," which is essentially "an unintentional murder committed in the course of committing a felony." *Rodriguez v. State*, 454 S.W.3d 503, 507 (Tex. Crim. App. 2014) (citation omitted); *see also Lomax v. State*, 233 S.W.3d 302, 305-07 (Tex. Crim. App. 2007); *Walter v. State*, 581 S.W.3d 957, 970 (Tex. App.—Eastland 2019, pet. ref'd). "The State must prove the elements of the underlying felony, including the culpable mental state for that felony, but no culpable mental state is required for the murder committed." *Walter*, 581 S.W.3d at 970.

Section 29.02 of the Penal Code provides that a person commits the offense of robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 29.02(a)(1). "Theft" is the unlawful appropriation of property "with intent to deprive the owner of the property." *Id*. § 31.03(a). "'In the course of committing theft' means conduct that occurs in an attempt to commit, during

the commission, or in immediate flight after the attempt of commission of theft." *Id*. §

29.01(1). "The gravamen of the offense of robbery is the assaultive conduct against the

victim." *Walter*, 581 S.W.3d at 973.

*Evidence at Trial*

D'Angelo Arnold, a friend of Vaughn's, testified that Richie shorted him in a one-

gram marijuana sale. Arnold mentioned this to Vaughn, who told Arnold to give Richie

Vaughn's Snapchat information so he could contact Richie pretending to purchase

marijuana but actually intending to steal the marijuana. Arnold agreed in exchange for

a share of the marijuana. Vaughn elicited the assistance of Baudoin, a close friend and

occasional roommate. Vaughn told police that Baudoin told him on the way to Richie's

house that he also intended to steal Richie's cell phone. Vaughn thought that was unwise

since a password was required to actually use the phone.

Vaughn drove his car to the meeting with Richie. When they were close to their

destination, Baudoin climbed into the back seat. Richie got in the front passenger seat of

the car. Baudoin produced a gun and told Richie to hand over the marijuana and

anything else he had. Vaughn's girlfriend testified that Vaughn told her that he then

patted Richie down at Baudoin's urging looking for other valuables. Baudoin then

demanded that Richie turn over his cell phone, but Richie refused to do so. Vaughn's

girlfriend testified that Vaughn told her that there was a "scuffle" between the three of

them over the cell phone. Vaughn told Arnold that he "tased" Richie with the taser he

brought along for the robbery. Richie then opened the car door to flee and tripped over

the curb. Baudoin fired the gun as Richie was exiting the vehicle. Baudoin told Arnold

that the gun jammed after the single shot. Richie fell to the ground, then jumped up and ran into his house where he succumbed to his injuries. Richie's cell phone was found beside his body.

Vaughn then drove off and returned to Arnold's residence, where he gave Arnold eight grams of the twenty-three grams of marijuana they stole from Richie. Vaughn told police that he was unsure whether Richie had been shot since Richie ran into his house. Vaughn learned of Richie's death the next day.

Based upon information provided by Baudoin, police searched a vacant lot close to Arnold's house for a firearm and a taser but were unable to locate either one. The police found no shell casings in Vaughn's car, but did recover thirty-one, unspent .25 caliber rounds and four 9mm caliber rounds of ammunition from Baudoin's vehicle. The police did not find any shell casings outside or inside of Richie's house.

Although Vaughn denied knowing that Baudoin had a firearm when they went to Richie's house, the jury was entitled to give credence to the girlfriend's testimony that Vaughn assisted with the robbery after Baudoin pulled the gun by patting Richie down and "scuffling" with Richie over the cell phone. Accordingly, we conclude there was sufficient evidence presented to support Vaughn's conviction for felony murder. We overrule Vaughn's single issue.

### *Conclusion*

Having overruled Vaughn's single issue, we affirm the judgment of the trial court.

MATT JOHNSON
Justice

Before Chief Justice Gray,
      Justice Neill, and
      Justice Johnson
Affirmed
Opinion delivered and filed March 10, 2021
Do not publish
[CRPM]

