

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00215-CR

**JIMMY LATHEL GIDDENS,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 12th District Court
### Walker County, Texas
### Trial Court No. 28,293

---

## MEMORANDUM OPINION

---

Jimmy Lathel Giddens was charged by indictment with the felony offense of driving while intoxicated, third or more. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b). The jury found Giddens guilty, found both of the enhancement allegations pertaining to his prior felony convictions for burglary with intent to commit sexual assault and driving while intoxicated, third or more, to be true, and assessed his punishment at seventy-five

years' in prison. In two issues, Giddens challenges the sufficiency of the evidence supporting his conviction and the assessment of attorney's fees. We affirm as modified.

## Sufficiency of the Evidence

In his first issue, Giddens contends that the evidence is insufficient to support his conviction for driving while intoxicated, third or more. We disagree.

STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S. Ct. 2781. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. 2781); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim.

App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

ANALYSIS

As mentioned earlier, Giddens was convicted of the felony offense of driving while intoxicated, third or more.[1] *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2). A person commits the offense of driving while intoxicated if "the person is intoxicated while operating a motor vehicle in a public place." *See id.* § 49.04(a). On appeal, Giddens argues the state did not present sufficient evidence to prove that he was operating a motor vehicle.

---

[1] The State alleged that Giddens had two prior convictions for driving while intoxicated, which, if proven, elevated Gidden's charge to a third-degree felony driving while intoxicated.

Kelsey Albert, Meikayla Watson, and Ireann Martez were all riding in Albert's vehicle when they observed Giddens driving a tan van on the evening in question. When the ladies were stopped at a traffic light, they saw Giddens finishing "a Budweiser beer" while looking at them. Before the light turned green, the ladies recalled that Giddens "flicked" a beer can at Albert's vehicle. After the light turned green, Giddens "sped off fast" and began swerving and cutting off Albert each time she tried to change lanes. The ladies believed that Giddens was trying to run them off the road.

Believing that Giddens must have been inebriated, Albert began following Giddens. At some point during the pursuit, Officer Cody Adams of the Sam Houston State University Police Department began following Albert's vehicle when he noticed that her vehicle did not have a license plate light. Shortly thereafter, Officer Adams initiated a traffic stop. Albert and Officer Adams pulled into the parking lot of a Jack-in-the-Box restaurant where Giddens' tan van was also parked. During the stop, Officer Adams and other law enforcement officers learned: (1) from Albert, Watson, and Martez that Giddens was wearing a white t-shirt and had been swerving and driving erratically; (2) that Giddens had "flicked" a beer can at Albert's vehicle; (3) that three Bud Light beer bottles were found in Giddens' tan van; and (4) that Giddens had slurred speech, bloodshot eyes, and a very strong odor of alcohol on his breath. During the course of the stop, law enforcement also retrieved a Bud Light can that Giddens "flicked" at Albert's

vehicle near the intersection that Albert, Watson, and Martez had described. The Bud Light can was "probably a third full, cold to the touch" with condensation on it.

In support of his argument that the evidence did not establish that he had operated a motor vehicle, Giddens directs us to some inconsistencies in the testimony. He asserts that the evidence did not show he was in any vehicle; his clothing did not match the description given by witnesses; and the beer bottles found in the tan van were inconsistent with the beer can found at the intersection where Albert, Watson, and Martez first observed Giddens.

As stated earlier, Albert, Watson, and Martez all identified Giddens as the man who was swerving and driving erratically in a tan van after seeing him consume beer and "flick" a beer can at Albert's vehicle. Additionally, Officer Adams stated that Giddens had keys on his person and referred to the keys as his own. Furthermore, Giddens also identified the tan van as his and consented to a search of the tan van. Moreover, Kevin Hansford, a sergeant with the Sam Houston State University Police Department, testified that, when he arrived at the scene, Giddens was walking towards the Jack-in-the-Box away from the tan van and that Giddens was wearing a red shirt with a white towel around his neck that the jury could infer was the t-shirt. Based on this evidence, the jury could have reasonably inferred that Giddens had operated a motor vehicle.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have concluded that Giddens operated a motor vehicle

while he was intoxicated. *See id.* § 49.04(a); *see also Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732-33; *Villa*, 514 S.W.3d at 232. And to the extent that the evidence conflicts, we are to defer to the jury's resolution of such inconsistencies in the evidence. *See Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge."). We overrule Giddens' first issue.

## Attorney's Fees

In his second issue on appeal, Giddens complains that the trial court erred by ordering him to reimburse for attorney's fees in the absence of evidence that he had the ability to pay the fees.

The original Clerk's Record filed in this case did not contain a bill of costs. *See* TEX. CODE CRIM. PROC. ANN. art. 103.006. ("If a criminal action . . . is appealed, an officer of the court shall certify and sign a bill of costs stating that costs that have accrued and send the bill of costs to the court to which the action or proceeding is . . . appealed."). Upon discovery, we informed the Walker County District Clerk's Office of this deficiency. After both sides had filed their briefs, we received a Supplemental Clerk's Record containing two bills of costs. The first bill of costs, which was signed and certified on June 24, 2021, indicated that $4,175 in attorney's fees had been assessed. The second bill of costs,

entitled "Amended Criminal Bill of Costs," was signed and certified on April 7, 2022, and indicated that no attorney's fees had been assessed. Furthermore, the Supplemental Clerk's Record also contained an amended order to withdraw funds with an amount that reflected that the attorney's fees had not been assessed and were not being collected.

However, despite the fact that the "Amended Criminal Bill of Costs" that was signed and certified on April 7, 2022, and the corresponding amended order to withdraw funds, reflect that the attorney's fees about which Giddens complains have been deleted, the trial court's judgment signed on June 24, 2021, still reflects "reimbursement fees" in the amount of $4,310, which includes the $4,175 in attorney's fees that had been assessed previously. Given the foregoing, we modify the trial court's judgment to reflect a reduction in the "reimbursement fees" by $4,175, which corresponds with the attorney's fees that have since been deleted from the bill of costs. Accordingly, we sustain Giddens' second issue.

### Conclusion

Because we have sustained Giddens' second issue, we modify the trial court's judgment to reflect a reduction of "reimbursement fees" by $4,175, which corresponds with the attorney's fees that have been deleted from the bill of costs in this case. We affirm the trial court's judgment as modified.

MATT JOHNSON
Justice

Before Chief Justice Gray,
     Justice Johnson,
     and Justice Smith
Affirmed as modified
Opinion delivered and filed May 25, 2022
Do not publish
[CRPM]

