

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00007-CR
No. 02-22-00008-CR

_____

DONALD ERIC CANTWELL, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 90th District Court
Young County, Texas
Trial Court Nos. CR11695, CR11696

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

A jury convicted Appellant, Donald Eric Cantwell, of assault on a public servant and assessed punishment at seven years' confinement and a $5,000.00 fine. In a consolidated trial, the jury also convicted Appellant of escape while in custody and assessed punishment at five years' confinement. The trial court ordered the sentences to run concurrently. Appellant brings three issues. He first argues that the trial court violated his due process rights by limiting cross-examination on *mens rea*. In his second issue, Appellant contends that the evidence is insufficient to support his convictions because the evidence did not support a finding of intent. Appellant finally argues that the trial court prevented him from establishing his self-defense action. We affirm.

## BACKGROUOND

On January 20, 2021, Graham PD responded to a call involving a "verbal altercation" at the residence of Frances Alvarez. Sergeant Christopher Post described Alvarez as flustered and scared. Alvarez told Sergeant Post that Appellant, her grandson, had been drinking all day and that he was destroying things in the house and making holes in the walls. Sergeant Post waited for his partner to arrive before confronting Appellant.

After Officer Huerta arrived, the officers went to the back porch of the residence to contact Appellant. The officers observed that Appellant was drinking an alcoholic beverage and that there were several empty alcoholic beverage containers around the porch. Sergeant Post asked Appellant to talk, but Appellant did not want

to speak to him. Appellant was upset that he was not able to dry his socks inside the house because the clothes dryer was broken, and he was using a heat lamp to dry his socks.

Sergeant Post evaluated whether a crime had been committed and whether Appellant was a danger to himself. Sergeant Post followed Graham PD protocol and determined that a crime had not been committed and that Appellant did not need to be taken into custody for a mental health evaluation. Sergeant Post went back inside the residence to talk to Alvarez while Officer Huerta was standing by providing cover. Sergeant Post informed Alvarez that, at that point in time, they did not have a reason to detain Appellant for a mental health evaluation, but Sergeant Post explained the process for her to obtain a mental health warrant.

While Sergeant Post was talking to Alvarez, Appellant approached Officer Huerta and said that the officers had no right to be in the house and yelled for them to get out. Appellant pushed Officer Huerta and swung at him several times, striking him on the left arm and grazing the left side of his head. At this point, the officers determined that a crime had been committed and called for backup to assist in taking Appellant into custody. While waiting for backup, Appellant told the officers through the back door, "We're done," and Sergeant Post replied, "We're not done here. You hit my officer."

After the two backup officers arrived, all of the officers approached Appellant and informed him that he was under arrest. Appellant did not comply with the

3

officers' instructions to turn around and put his hands behind his back, but instead he took a "boxer stance" and threatened the officers that if they were going to arrest him, they were "going to go to fists." The officers again advised Appellant that he was under arrest. Appellant then walked toward Officer Huerta and shoved him. Officer Huerta fell off of the elevated porch injuring his hip and his head.

The officers attempted to restrain Appellant, who was continuing to resist arrest. One of the officers used his taser in an effort to detain Appellant. Officers had to deploy the taser a second time in order to detain Appellant and place him in handcuffs. Because the officers used the taser to restrain Appellant, they called for EMS to come evaluate him.

While Appellant was being evaluated by EMS, Sergeant Post spoke with Appellant's family members. The two deputies who arrived for backup stayed with Appellant while he was being evaluated. While still in custody and handcuffed, Appellant took off running and fled from the deputies. The officers gave chase and instructed Appellant to stop. The officers caught Appellant and placed him back in custody. Appellant was again evaluated by EMS and then taken to jail.

## SUFFICIENCY OF THE EVIDENCE

In the second issue, Appellant contends that the evidence is insufficient to "support the necessary findings of criminal intention to support the elements for conviction."

4

**A. Standard of Review**

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend XIV. The *Jackson* standard of review, which is explained below, is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)). "[W]e review the sufficiency of the evidence establishing the elements of a criminal offense under the single sufficiency standard set out in *Jackson v. Virginia*." *Acosta v. State*, 429 S.W.3d 621, 624 (Tex. Crim. App. 2014).

In our evidentiary-sufficiency review, we view all evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d

5

592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

## B. Substantive Law and Analysis

Appellant was charged with assault on a public servant and escape from custody. Taking each crime individually, a person commits the offense of assault on a public servant if he intentionally, knowingly, or recklessly causes bodily injury to a person he knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of an official power or performance of an official duty as a public servant. Tex. Penal Code Ann. § 22.01(a)(1), (b)(1). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(8).

Officer Huerta testified that Appellant pushed him off of the porch causing pain and bruising to his hip. Officer Huerta also injured his head during the fall and suffered a possible concussion. According to Officer Huerta, the officers were in full uniform, and Appellant appeared to know they were police officers. Sergeant Post stated at trial that he was in full uniform when he first contacted Appellant and asked to speak with him. When asked if anything would leave him to believe Appellant did

not have the ability to understand that he was talking to law enforcement, Sergeant Post responded that Appellant understood he was dealing with law enforcement.

A person commits the offense of escape if the person escapes from custody when the person is under arrest for, lawfully detained for, charged with, or convicted of an offense. Tex. Penal Code Ann. § 38.06. Sergeant Post testified at trial that Appellant was informed he was under arrest and that he was handcuffed and taken into custody. While in custody, Appellant fled and had to be pursued by the officers and taken back into custody.

Appellant specifically challenges that the evidence is insufficient to support a finding beyond a reasonable doubt that he acted intentionally or knowingly. The State argues that Appellant is attempting to prove diminished capacity, and Texas law does not recognize a lesser form of the insanity affirmative defense, citing *Jackson v. State*, as authority. *Jackson v. State*, 160 S.W.3d 568 (Tex. Crim. App. 2005). As stated in *Jackson*, Texas does not recognize diminished capacity as an affirmative defense. *Jackson*, 160 S.W.3d at 573. However, Appellant argues, as argued in *Jackson*, that the State failed to prove he had the required state of mind at the time of the offense. *See id.* In *Jackson*, the Court found that relevant evidence may be presented that the jury may consider to negate the *mens rea* element. *Id.* at 574. Therefore, we will review the evidence to determine whether any rational factfinder could have found the element of intentionally and knowingly beyond a reasonable doubt. *See id.* at 575.

The State presented testimony that Appellant wrapped his hands in towels, yelled at Officer Huerta to get out of the house, pushed Officer Huerta, and then swung at Officer Huerta, striking his arm. When told he was under arrest, Appellant took a boxer stance and told the officers, "[i]f you are going to arrest me, we're going to go to fists." The officers were in full uniform when they talked to Appellant. The jury also viewed the body camera videos from Sergeant Post and Officer Huerta.

On the body camera video, Alvarez explained to Sergeant Post that Appellant has been to the mental hospital in Wichita Falls and that he needed to stay there. Officers informed Appellant that his grandmother asked them to come, but Appellant repeatedly told them to leave. Sergeant Post told Alvarez that Appellant was having a mental health issue. After Appellant was placed under arrest, Sergeant Post discussed Appellant's mental health with his family members who arrived at the scene. Officer Huerta's body camera video also showed a discussion on Appellant's mental health with family members. Officer Huerta told the family members that MHMR would be contacted. At trial on cross-examination, Appellant questioned Sergeant Post about statements he had made in the body camera video concerning Appellant's mental health. Sergeant Post acknowledged on cross-examination that he told family members that Appellant would get the help that he needed.

Also on cross-examination, Appellant asked Sergeant Post about the protocol for having a forced intervention for a mental health evaluation. Appellant specifically asked Sergeant Post about Appellant's state of mind at the time of the offense:

8

Q: What made you believe that [Appellant] had the state of mind where he was not confused not talking nonsense but he actually was informed and consciously, objectively was taking the action of breaking the law, sir?

A: Because I'm not in a position to determine whether a person is mentally fit or unfit, ma'am, because I'm not a doctor.

Q: I asked when you first saw that you thought he had the capacity though because you heard he might not?

A: Well, he recognized who we were. We had a conversation. Yes. Did he go off in right field sometimes? Yes, but he still answered our questions. He was poignant to the point of he knew who we were. He recognized our authority, so to me that infers as a person that he knows what's going on. And he came screaming to my officer - - come to find out after the fact that he was screaming for him to leave. He knew who my officer was and didn't want him in his house.

Q: Did that seem like nonsense to you?

A: No, ma'am.

Q: So you thought he was making sense? He was tracking? He was tethered to the ground?

A: Well, I think that alcohol played a factor in this because people that are drinking, regardless of the amount consumed, people's minds and perception of things changes. So I couldn't - - I don't - - I'm not there to discern whether it's the state of intoxication or if it the - - whether he has or doesn't have a mental health issue.

A requisite culpable mental state, *mens rea*, is almost always proven by circumstantial evidence. *See Stobaugh v. State*, 421 S.W.3d 787, 862 (Tex. App.—Fort Worth 2014, pet. ref'd). The jury was able to make inferences on Appellant's mental state from the testimony at trial and the body camera videos. Sergeant Post testified

9

that, although he is not able to determine whether a person is mentally fit or unfit, he believed Appellant had the requisite mental intent to commit the offenses.

The jury heard evidence of Appellant's capacity and state of mind at the time of the offenses. The jury evaluates the evidence's weight and credibility. *Martin*, 635 S.W.3d at 679. We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. The jury considered the evidence and believed that the State proved each element of the offense of assault on a public servant, including the *mens rea* of intentionally and knowingly. *Jackson*, 160 S.W.3d at 573. We hold that the evidence is sufficient to prove beyond a reasonable doubt that Appellant committed assault on a public servant and escape from custody. We overrule the second issue.

## CROSS-EXAMINATION

In the first issue, Appellant argues that the trial court violated his due process rights by failing to allow him to cross-examine witnesses about his state of mind. In this issue, Appellant complains only that the trial court limited his cross-examination of the State's witnesses—not that the trial court denied him an opportunity to present evidence or witness testimony concerning his mental state. Appellant does not specifically identify any particular evidence he was prevented from offering or any testimony he was prevented from eliciting.

**Standard of Review**

We review the trial court's decision to admit or exclude evidence—including its decision regarding whether the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence substantially outweighs the disputed evidence's probative value—under an abuse-of-discretion standard. *Gonzales v. State*, 544 S.W.3d 363, 370, 372 (Tex. Crim. App. 2018). Decisions lying outside the zone of reasonable disagreement constitute an abuse of discretion. *Id.* at 370. Provided that the trial court's ruling falls within the reasonable-disagreement zone, we may not substitute what we would have done for what the trial court actually did. *Id.*

**Applicable Law**

Appellant relies on *Ruffin v. State* to support his argument that testimony concerning a defendant's state of mind is admissible when such testimony may be relevant to rebut or disprove the defendant's culpable *mens rea*. 270 S.W.3d 586, 594–95 (Tex. Crim. App. 2008). In *Ruffin*, the Court reaffirmed its holding in *Jackson* and held that both lay and expert testimony of a mental disease or defect that directly rebuts the particular *mens rea* necessary for the charged offense is relevant and admissible unless excluded under a specific evidentiary rule. *Id.* at 587–88.

However, the evidence must still meet the admissibility requirements of Rule of Evidence 403. *Jackson*, 160 S.W.3d at 574. Under Rule 403, the trial court may exclude relevant evidence if the probative value of the evidence "is substantially outweighed

11

by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. Even if evidence is relevant to an element of the offense, the trial court still must determine whether the evidence is admissible. *Jackson*, 160 S.W.3d at 574. The trial judge has discretion to determine whether evidence of mental illness may be presented to negate the element of *mens rea,* or whether the evidence should be excluded on special grounds. *Id.*

**Analysis**

The record shows that on cross-examination, Appellant was permitted to ask Sergeant Post his position on Appellant's mental health. Sergeant Post acknowledged that he is not a mental health professional and explained the police department's policy for a forced intervention for a mental health evaluation. The trial court encouraged Appellant's counsel to question Sergeant Post about mental health as it relates to the offenses rather than discuss the process for obtaining a mental health warrant and the mental health treatment process after arrest. As previously set out in detail, Appellant's counsel was able to question Sergeant Post extensively about Appellant's capacity and state of mind at the time of the offense.

Appellant's counsel asked Officer Huerta on cross-examination, "How did you perceive [Appellant's] state of mind that evening?" Officer Huerta responded, "In my opinion, I believe he was intoxicated and he had mental health issues." Appellant's

counsel was able to ask Officer Huerta how he addressed Appellant's mental health issues.

The trial judge has discretion to determine whether evidence of mental illness may be presented to negate the element of *mens rea*. *Jackson*, 160 S.W.3d at 574. The record shows that the trial court allowed cross-examination on Appellant's state of mind at the time of the offense. The trial court limited questioning on the requirements for obtaining a mental health warrant and the mental health procedures at the jail. In *Ruffin*, the Court found that the expert testimony of the psychologist was relevant to the issue of whether the defendant intended to shoot at police officers. *Ruffin*, 270 S.W.3d at 596. Unlike *Ruffin*, there was no mental health expert offered to discuss Appellant's mental state at the time of the offense or any history of mental illness. Appellant does not specifically identify any particular evidence that he was prevented from offering or any specific testimony that he was prevented from eliciting. We do not find that the trial court's rulings concerning the admission of evidence to negate the element of *mens rea* to be an abuse of discretion. *See Jackson*, 160 S.W.3d at 574. We overrule the first issue.

## SELF-DEFENSE

In the third issue, Appellant argues that the trial court's limitations on his cross-examination and refusal of evidence of his mental state prevented him from raising self-defense. He contends that he was not afforded the opportunity to "test the

13

witnesses['] representations regarding his intent or knowledge in a meaningful way" and that such denial prejudiced the jury.

**Substantive Law and Analysis**

A person is justified in using force against another when and to the degree that the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. Tex. Penal Code Ann. § 9.31(a). The use of force against another is not justified to resist an arrest or search that the actor knows is being made by a peace officer even though the arrest or search is unlawful. *See id.* § 9.31(b)(2).

Appellant told the officers that if they were going to arrest him, "we're going to go to fists." Appellant was not justified in using force against the officers to resist arrest. *See id.* § 9.31(b)(2). In addition, self-defense is a confession-and-avoidance defense requiring the defendant to admit to his otherwise illegal conduct. *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020). There is nothing in the record to indicate that Appellant satisfied the confession-and-avoidance prerequisite to obtaining a self-defense instruction. Appellant has not shown that he was improperly prevented from raising self-defense. Moreover, having found in the first issue that the trial court did not abuse its discretion in the rulings on the admission of testimony concerning Appellant's mental state, we do not find that those rulings prevented him from raising self-defense. We overrule the third issue.

**CONCLUSION**

Having overruled Appellant's three issues, we affirm the trial court's judgments.


/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 4, 2023