

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

### NO. PD-0541-16

---

### JAIME VILLA, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE EIGHTH COURT OF APPEALS EL PASO COUNTY

---

**KELLER, P.J., delivered the opinion of the unanimous Court.**

Appellant participated with gang members in a gang-related assault. The complainant testified that he was assaulted by gang members and that appellant was one of the people who assaulted him. The court of appeals held that the evidence was insufficient to show that appellant was himself a member of the gang. We hold that the court of appeals failed to view the evidence in the light most favorable to the verdict and that it therefore erred in holding the evidence to be insufficient.

# I. BACKGROUND

## A. Trial

Ruben Bejaran, a former member of the Barrio Azteca gang, gave an interview with National Geographic as part of its "Lockdown" series on street gangs. Whether it was the result of this interview or for some other reason,[1] Bejaran aroused the ire of the gang leadership—earning himself a "green light" or a "hit," meaning that gang members who saw him would do what they could to hurt him, including killing him on sight. Bejaran was later assaulted by a group of people while attending a party. Appellant participated in this assault and was charged with engaging in organized criminal activity as a member of a street gang.[2]

Bejaran testified at trial about his ordeal. While he was at the party, he recognized a Barrio Azteca gang member known as "2Short." Upon seeing 2Short, Bejaran left, but he later returned. When he came back, the hostess told Bejaran that he needed to leave. As he turned to leave, Bejaran ran into another gang member known as "Giant," and the two began to fight. Bejaran testified to what happened next:

Q. What happens next?

A. And then we're pushing the fight towards the middle of the street, right there by the driveway, and other gang members start coming towards me, at least like six at that time, at that moment.

Q. Do you recognize anybody?

---

[1] Other possible reasons were that Bejaran failed to maintain control in the jail (a riot broke out), failed to collect sufficient taxes for the gang, and claimed a rank within the gang that he did not have.

[2] The indictment stated that appellant "did then and there as a member of a criminal street gang, to-wit: Barrio Azteca, commit the criminal offense of Aggravated Assault (with a Deadly Weapon)." The indictment contained other allegations that we need not detail here.

A. Yes.

Q. Who did you recognize?

A. I recognized Hawaiiano. I recognized Felix. I recognized Tiny. I recognized Sleepy. I recognized 2Short and, of course, Giant.

Bejaran later testified that "Sleepy" was appellant's nickname. Testimony from another witness showed that Felix was appellant's brother, and other testimony showed that there were two individuals known as "Tiny" who participated in the fight, one of whom was from Chaparral and was appellant's brother or stepbrother. Bejaran stated that "a lot more Azteca members" joined the fight, but he "didn't recognize all of them." Several of the gang members stabbed Bejaran with knives, while Hawaiiano and appellant stomped on him.

After this description of the attack, the State began questioning Bejaran about each of the identified individuals, one by one, beginning with an identification of the individual in a photo array. During the individual questioning about 2Short, Hawaiiano, Giant, Tiny, and Felix, the State asked Bejaran if each was a Barrio Azteca gang member and Bejaran responded affirmatively. The State also asked Bejaran about Tiny from Chaparral, and Bejaran explained that it was Tiny who first introduced him to appellant:

Q. Okay. And how do you know Tiny from Chaparral?

A. I've known him from the jail Annex.

Q. Okay. And did you work together?

A. And we worked together. I ended up running into him at a job site at some apartments, and he's the one who introduced me to Sleepy, and he's the one who introduced me to Felix'[s] brothers.

Q. And were they introduced to you just as, "these are my brothers," or were they introduced to you as gang members?

A. As prospects.

Q. Okay. So not quite gang members but prospects?

A. Yes.

Later, Bejaran testified more about the fight:

> Like when I swung [at Giant], I barely, like missed, but, like, I grazed him, and he went back. And I was going to try to hit him again, and that's when I saw like five of them, the ones that I had mentioned, the ones that I had punched. I saw them right there, and then when I started fighting them from the driveway, fighting them all towards the street—I didn't know what my brother was doing. I was too involved in these guys. And the next thing I know, I'm surrounded by like 18, 20 of them.

Andres Sanchez, a detective with the gang unit of the El Paso Police Department, testified that the gang unit administers a database of gang members based on criteria in the Code of Criminal Procedure.[3] One criterion alone was sufficient to classify a person as a gang member if that criterion was either an in-court self-admission of gang membership or a judgment of conviction for a gang-related crime.[4] Otherwise, two criteria were required,[5] or in one situation, three criteria.[6] Some of these criteria included a self-admission of gang membership outside of court, associating with known criminal street gang members, being arrested with known gang members for a crime that is consistent with gang activity, or using specific letters, words, marks, or colors associated with the gang.[7]

---

[3]  *See* TEX. CODE CRIM. PROC. art. 61.02.

[4]  *See id.* art. 61.02(c)(2)(A) & (B).

[5]  *See id.* art. 61.02(c)(2)(C).

[6]  *See id.* art. 61.02(d).

[7]  *See id.* art. 61.02(c)(2)(C).

Detective Sanchez testified that several of the people involved in the assault met at least two of the criteria in the two-criteria situation. For example, regarding Felix, Detective Sanchez testified as follows:

Q. Do you have an opinion as to whether Mr. [Felix] Villa is a gang member?

A. Yes, sir.

Q. What is your opinion?

A. It would be Barrio Azteca.

Q. And how did you reach that opinion?

A. It would be through the two criteria that he has met, and it was in reference to this case. It was evidence of arrest and evidence of association.

Regarding Tiny from Chaparral, Detective Sanchez similarly testified:

Q. Do you have an opinion as to whether Mr. Vasquez [Tiny from Chaparral] is a Barrio Azteca gang member.

A. Yes, he is.

Q. And how did you reach that conclusion, sir?

A. Again, through the set of criteria that he has met.

When asked to detail how he met that criteria, Detective Sanchez pointed to association, arrests, and a self-admission.

Detective Sanchez likewise testified that appellant met the two-criteria situation, because he associated with known gang members and was arrested with gang members for a crime consistent with gang activity:

Q. And do you have an opinion as to whether the defendant is a Barrio Azteca gang member?

A. Yes, sir.

Q. And how did you reach that opinion?

A. Again, he's met the two criteria, as mandated by the Code of Criminal Procedure[]. He has evidence of arrest and evidence of association in reference to this case.[8]

Detective Sanchez acknowledged that "both criteria come from just this case" but testified that such a situation was "not unusual." When questioned about a tattoo that appellant had of Aztec culture, the detective answered that such a tattoo does not, standing by itself, make someone a member of the Barrio Azteca gang, and he did not consider it in his assessment of appellant's gang status. When asked whether familial relationship with a gang member was a factor in assessing whether a person was a gang member, Detective Sanchez said that the jail and prison authorities relied upon that as a factor but that was not a factor relied upon by the gang unit for inclusion in the database.

Detective Sanchez also testified that if one member of the Barrio Azteca gang starts a fight with someone that the gang has green-lighted, other gang members who are present would have to join in or risk being expelled from the gang and assaulted or killed.

A jury convicted appellant of engaging in organized criminal activity and sentenced him to fifteen years in prison and a fine of $2,000.[9]

**B. Appeal**

On appeal, appellant claimed that the evidence was legally insufficient to show that he was

---

[8] *See id.* art. 61.02(c)(2)(C)(iv) & (vi).

[9] Appellant was also charged with and convicted of aggravated assault for the conduct arising from this incident. The court of appeals affirmed that conviction, and it is not at issue before us. *See Villa v. State*, No. 08-14-00047-CR, 2016 Tex. App. LEXIS 4249, *18-21 (Tex. App.—El Paso April 22, 2016) (not designated for publication).

a member of the Barrio Azteca gang, and therefore, was insufficient to show that he intended to participate in the assault as a member of the gang. The court of appeals agreed.[10] The court examined three pieces of evidence relied upon by the State to tie appellant to the Barrio Azteca gang: (1) direct testimony of Bejaran, (2) expert testimony from Detective Sanchez, and (3) the gang rule that required every gang member to join in a fight.[11]

Regarding Bejaran's direct testimony, the court of appeals found that his reference to "other gang members" did not clearly relate to the six people that he identified because he later said that seventeen to nineteen other people were in the immediate area and that some of them were involved in the fight.[12] The court also pointed to the fact that Bejaran individually discussed the six people he had named and identified five of them as gang members, but did not, in this *individual* discussion, say that appellant was a gang member[13] or explain how he would have known appellant to be a gang member.[14]

The court of appeals also discounted the significance of Bejaran's testimony regarding the time he was introduced to appellant.[15] The court claimed that this testimony did not link appellant to the gang because "it only indicates that Felix'[s] brothers, whoever they may be, were introduced

---

[10] *Id.*, 2016 Tex. App. LEXIS 4249, at *18.

[11] *Id.* at *10.

[12] *Id.* at *18.

[13] *Id.* at *15-17

[14] *Id.* at *17.

[15] *Id.* at *15-16.

as prospects."[16]  The court held that Bejaran's testimony in this regard could be interpreted in two different ways, but "under either interpretation, the two brothers introduced as prospects could not be [a]ppellant."[17]

Turning to the expert testimony of Detective Sanchez, the court of appeals stated that, while the State asked if he had an opinion about whether appellant was a gang member, "he was never directly asked what that opinion was."[18]  But "[e]ven if the jury inferred an opinion from the detective's other testimony," the court of appeals discounted that opinion because it relied upon the arrest of appellant *in this case* to qualify appellant for inclusion in the gang database.[19]  The court held that this arrest could not count because an arrest is no evidence of guilt and to view it as evidence would "turn the presumption of innocence on its head," causing an arrest on a particular charge to become substantive evidence of guilt of that charge.[20]  If the arrest criterion were excluded, then only one criterion out of the two required for inclusion in the database would be satisfied.[21]

The court of appeals held that reliance on the gang rule about joining in a fight was an

---

[16]  *Id.* at *16.

[17]  *Id.*  The court further stated, "The State does not contend otherwise in its briefing, and this testimony does not support an inference that [a]ppellant was a prospect, or a member of the Barrio Aztecas." *Id.*

[18]  *Id.* at *13.

[19]  *Id.*

[20]  *Id.* at *13-14.

[21]  *Id.* at *14.  The court of appeals found the remaining criterion to be that appellant had relatives who were members of the gang. *Id.* at *13.  This conclusion is inconsistent with Detective Sanchez's testimony, which stated that having relatives who were gang members was *not* one of the criteria for inclusion in the database and that the other criterion that applied to appellant was associating with known gang members. *See also* TEX. CODE CRIM. PROC. art. 61.02(c)(2)(C)(iv).

example of the logical fallacy of "affirming the consequent."[22] It found that the State was essentially

saying, "Being in the gang requires you to fight. You fought. Therefore, you are in the gang."[23] The

appellate court reasoned that appellant might have been fighting for other reasons than gang

membership. For instance, he might have joined the fight because two of his relatives were involved

in the fight[24] or he might simply have been "a lemming following the crowd."[25]

Concluding that the evidence was legally insufficient to show that appellant was a member

of the Barrio Azteca gang, the court of appeals reversed the judgment of conviction and ordered a

judgment of acquittal.[26]

## II. ANALYSIS

The standard of review for determining the legal sufficiency of the evidence to support a

conviction is whether, after viewing all of the evidence in the light most favorable to the prosecution,

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt.[27] This standard requires the appellate court to defer "to the responsibility of the trier of fact

to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences

---

[22] *Villa*, 2016 Tex. App. LEXIS 4249, at *10-11.

[23] *Id.* at *11.

[24] *Id.* at *11-12. The court of appeals suggested that appellant's motive for joining family members in such a fight might have been "some perverse sense of familial duty." *Id.*

[25] *Id.* at *12.

[26] *Id.* at *18.

[27] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in *Jackson*); *Liverman v. State*, 470 S.W.3d 831, 835-36 (Tex. Crim. App. 2015).

from basic facts to ultimate facts."[28] The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence.[29] Deference to the trier of fact extends to the inferences drawn from the evidence as long as the inferences are reasonable ones supported by the evidence and are not mere speculation.[30]

The statute proscribing organized criminal activity makes it an offense if, "as a member of a criminal street gang, the person commits or conspires to commit" one of certain enumerated offenses, including aggravated assault.[31] At issue in this case is whether appellant was a member a criminal street gang. The court of appeals held that the evidence was insufficient to establish that fact.[32] After reviewing the evidence and the court of appeals's opinion, we conclude that the court of appeals took an improperly narrow view of Bejaran's testimony, and some of that testimony was not considered together with other relevant testimony.

When Bejaran testified that "other gang members start coming towards me, at least six at that time," and, asked next if he recognized anybody, said "yes" and named six people, a rational jury could have concluded that Bejaran was saying that the people he named were the gang members to whom he had just referred. In fact, it is the obvious and most likely meaning of the exchange. In

---

[28] *Jackson*, 443 U.S. at 319; *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (same quote except "the" before "testimony" is omitted).

[29] *Murray v. State*, 457 S.W.3d 446, 448-49 (Tex. Crim. App. 2015).

[30] *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

[31] TEX. PENAL CODE § 71.02(a)(1). "Criminal street gang" is defined as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." *Id.* § 71.01(d).

[32] *See supra* at part I.B.

declining to recognize this, the court of appeals failed to defer to the proper role of the finder of fact. This evidence was, by itself, sufficient to support a finding that appellant was a member of the gang.

The court of appeals found it significant that Bejaran identified each of the other named individuals as gang members in response to specific questions but that no such question and answer appears for appellant. But that does not erase Bejaran's earlier testimony, which, by itself, is sufficient to establish appellant's gang membership. The court of appeals said that this earlier testimony was unclear because Bejaran also mentioned that seventeen to nineteen other unnamed individuals were involved. We are skeptical that the mention of other unnamed individuals has any effect on the inference that the named individuals were gang members. But even if the mention of unnamed individuals would have allowed the jury to draw a different inference about the people that Bejaran had specifically identified, it did not preclude the jury from inferring that the named individuals were gang members. Moreover, the court of appeals did not discuss Bejaran's statement that "a lot more Azteca members joined the fight," some of whom he did not recognize. This statement suggests that all of Bejaran's attackers were members of the gang, which would include those attackers he recognized.

The court of appeals said that Bejaran did not say how he knew appellant was a gang member, but it was not necessary for Bejaran to explain how he knew appellant was a gang member for a rational jury to believe that he did in fact know it.

Moreover, the jury had evidence that the attack on Bejaran was a gang-motivated crime, that other attackers were identified as gang members, and that appellant worked in concert with these other attackers. These facts add further support for the jury's conclusion that appellant was himself a gang member.

We need not address the court of appeals's analysis of Detective Sanchez's expert testimony or of the existence of a gang rule requiring gang members to join in an attack. Even if the court of appeals's analysis were correct on those points, the evidence would still be sufficient, on the basis of the complainant's testimony alone, to support the conclusion that appellant was a gang member.[33] We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Delivered: March 22, 2017

Publish

---

[33] Our decision not to address those points should not be taken as implicit approval of the court of appeals's reasoning. While the gang rule does not, as a matter of *deductive* reasoning, show that a person who joins a fight is a member of the gang, as a matter of *inductive* reasoning, the rule increases the likelihood that appellant was a gang member. Given our holding with respect to the complainant's testimony, however, we need not address these matters further.