

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00347-CR
No. 07-16-00348-CR
No. 07-16-00349-CR

BERNARDO LUIS AVILA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 2928, Honorable Gordon Houston Green, Presiding

August 1, 2017

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Bernardo Luis Avila (appellant) appeals his three convictions for solicitation to commit capital murder. The sole issue before us involves the sufficiency of the evidence to establish that he intended that the three potential victims be killed. Allegedly, the evidence simply illustrated that he wanted their tongues removed. We affirm.

*Law*

The applicable standard of review is that most recently described in *Villa v. State*, 514 S.W.3d 227 (Tex. Crim. App. 2017). There, our Court of Criminal Appeals reiterated it as follows:

> The standard of review for determining the legal sufficiency of the evidence to support a conviction is whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard requires the appellate court to defer "to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. Deference to the trier of fact extends to the inferences drawn from the evidence as long as the inferences are reasonable ones supported by the evidence and are not mere speculation.

*Id.* at 232.

Next, a person commits an offense if, with intent that a capital felony or felony of the first degree be committed, he requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission. *See* TEX. PENAL CODE ANN. § 15.03(a) (West 2011). The capital felony involved at bar was capital murder. The type of capital murder at issue was that encompassed in § 19.03(a)(3) of the Penal Code, that is, the solicitation to commit murder by employing another to commit it for remuneration or the promise of remuneration. *See id.* § 19.03(a)(3) (West Supp. 2016).

Furthermore, and to the extent the person solicited to commit the crime testifies at trial, the Texas Penal Code specifically requires his testimony to be corroborated. That is, it states that a "person may not be convicted . . . on the uncorroborated

2

testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation." *See id.* § 15.03(b).

*Application of the Law*

As previously mentioned, appellant attacked only the element of murder. He argued that the State did nothing more than prove he sought the removal of the tongues of his intended victims. We disagree.

According to the evidence of record, appellant was incarcerated in a local county jail pending trial on unrelated charges. His three prospective victims purportedly were witnesses to that offense. He indicated to others that without them the prosecution would most likely falter. So, according to his cellmate, appellant asked him (the cellmate) to help find someone to "kill" the potential witnesses.[1] Instead of doing that, the cellmate contacted the district attorney of another county. The latter then contacted the Texas Rangers. And, the Texas Rangers selected one of their own to pose as a hit-man, which "hit-man" then contacted appellant in jail.

Appellant and the designated "hit-man" spoke of "some yards [having] . . . trash on them" and appellant wanting them "cleaned." The cost for the "yard-work" was $10,000 per yard, and the work was to be completed within two months or before appellant's approaching trial date. Apparently, discussions were had between the two about the method of performing the work, and it was during those discussions that appellant told the "hit-man" that he (appellant) wanted a knife to be used and wanted the victims' tongues removed. Appellant, though, never used the word "kill" when

---

[1] Appellant did not argue that the cellmate was an accomplice or that his testimony had to have been corroborated as well.

3

talking to the "hit-man."  Rather, in their recorded jailhouse conversations, only the "hit-man" used that term, such as when the "hit-man" attempted to afford appellant opportunity to change his mind.  In doing so, the person said:  "Like I told you, it's going to happen.  I'm going to *kill* the three."  (Emphasis added).

That appellant wanted to silence three potential witnesses to any earlier crime, that he sought help from his cellmate to find someone to "kill" those witnesses, that he was willing to pay $10,000 per person, and that he needed the work completed before his trial began is more than ample evidence from which a rational trier of fact could conclude beyond a reasonable doubt that appellant intended for the "hit-man" to intentionally cause the death of (or kill) the prospective witnesses.  It may well be that appellant never used the word "kill" when conversing with the "hit-man," but he did use it when asking his cellmate to find someone to perform the task, as testified to by the cellmate.  So, the "hit-man's" testimony about being hired to kill the people was "strongly" corroborated as required by § 15.03(b) of the Penal Code.

We overrule appellant's sole issue and affirm the three judgments.


Per Curiam


Do not publish.