

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00380-CR

**LAJUAN DEMOND BREWSTER,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 443rd District Court**
**Ellis County, Texas**
**Trial Court No. 44621CR**

## MEMORANDUM OPINION

The jury convicted Lajuan Demond Brewster, Appellant, of the offense of theft over the value of $2,500 but less than $30,000. The jury then assessed Appellant's punishment at confinement for six months in a State Jail Facility. The trial court sentenced him accordingly. We affirm.

In a single issue on appeal, Appellant urges us to hold that the evidence was insufficient to support the verdict of the jury.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When we conduct a sufficiency review, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight to be afforded to their testimony. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved any conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Further, we treat direct and circumstantial evidence equally under this standard. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence to establish a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). Therefore, when we evaluate the sufficiency of the evidence, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13.

Finally, we measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

It is within the framework of these standards that we review the evidence presented to the jury.

Appellant testified at his trial. On the morning of the offense charged in this case, Appellant decided to shop for Christmas gifts for his grandmother and aunt. He told his friend, Dominique Turner, about his plan. Turner told Appellant that she wanted to go with him. Ultimately, Turner and her niece, Sherolyn Johnson, went with him.

Appellant lived in Oak Cliff, but he planned to drive to Uptown Mall in Cedar Hill and shop there. Before they got to Cedar Hill, Turner told Appellant to drive on past Cedar Hill and that she would pay him to do that.

The three ended up in Midlothian and went into a Ross department store; Appellant thought that he could buy something cheap there, but they did not buy anything there. After they left Ross's, Appellant, Turner, and Johnson went to an Ulta Beauty store.

Jennifer Davis was the manager of Ulta Beauty and was on duty when Appellant, Turner, and Johnson entered the store. Davis testified that when the three entered the store, they did not respond to the greeting or other communications from store personnel; the trio was walking quickly as they entered. Those factors are indicators that something is not right.

Turner and Johnson went directly to that part of the store that contained Dior and Aqua di Gio fragrances, the more expensive fragrances and, consequently, high-theft items. They emptied five shelves of the perfume on display. In all, Turner and Johnson

filled an Ulta bag and a personal purse with a total of 41 bottles of those fragrances. The total value of the fragrances was $3,500.

While Turner and Johnson were stealing the perfume, Appellant "circled" the area where they were located. At one point, as a store clerk walked toward one of the women, Appellant appeared to position himself in a manner that blocked the clerk's view of the women; he was not shopping. Based upon her experience, Davis concluded that Appellant was either acting as a lookout for the two women or was there so that no one would bother them.

Davis testified that it was common for groups to be involved in theft. One of the members of the group was normally assigned the duties of a "lookout" and screen of those who were actually taking the merchandise. Detective Phillip Siegler, a detective with the Midlothian Police Department, later testified that he agreed with Davis. Officer Nicholas Barajas, a patrol officer with the Midlothian Police Department viewed the Ulta surveillance video of the event. Officer Barajas agreed with Davis and Detective Siegler and testified that he believed, based upon his training and experience, that Appellant assisted in the theft.

After Turner and Johnson had taken the perfumes, they ran to the front door of the store. As shown on the store surveillance video, Turner got out the door first, then Appellant, and then Johnson. All three quickly got into their vehicle, and Appellant drove away.

Store personnel had attached security tags to each of the fragrance bottles. When the trio went out the front door, they activated a rather loud security alarm. Additionally, the tags themselves were designed so that, when activated, loud beeping noises came from them.

After Appellant, Turner, and Johnson left the store, either Davis or other store personnel called the police. Customers were able to give police the license plate number and a description of the vehicle that Appellant was driving.

Lieutenant Clayton Regan, Patrol Sergeant at the time, responded to a police dispatch concerning the vehicle involved in the theft. About four miles from Ulta, Lieutenant Regan saw the vehicle and stopped it. Appellant was the driver, and he was headed in the direction of his home.

Several other officers appeared on the scene. In a subsequent search of the vehicle, officers found the fragrances that had been taken from Ulta. The security tags had been removed from the fragrances; officers did not find any security tags in the vehicle.

Appellant told Detective Siegler that Turner and Johnson removed the security tags and threw them out the window as Appellant drove. As previously stated, when activated, as these security tags were, a loud beeping noise could be heard coming from them.

Appellant's conversation with Detective Siegler, his testimony at trial, and the Ulta surveillance video contain contradictions. Appellant told Detective Siegler that the prices

in Ulta were too high and that he decided to leave the store and wait for Turner and Johnson outside. However, store surveillance video shows that Appellant left Ulta when Turner and Johnson left.

Appellant claims that he did not know what Turner and Johnson were doing until he heard Davis call Turner a thief while they were in the store. It was at that point that Appellant first thought that something must be going on. But Appellant also said that he did not know what was going on until Turner and Johnson started throwing the security tags out the window as Appellant was driving. And Appellant also said that he heard a "commotion" as they were leaving the store, but that he paid no attention to it. Although Appellant, in some of his statements or testimony, said he had no idea that Turner and Johnson were committing theft, he claims that he just wanted to get away because he did not want anything to do with a theft.

We hold that the evidence that we have just outlined is sufficient to support the verdict of the jury. Thefts of this nature are normally perpetrated by groups of people. One member of the group normally serves as a lookout or shield of those taking the items involved in the theft. Appellant's conduct in Ulta was indicative of the conduct of such a lookout or shield. Appellant hurriedly left Ulta with Turner and Johnson and drove away.

Appellant gave different versions about when he first knew that Turner and Johnson were committing theft. Although the security device at the front door of the

store was activated and emitting a loud noise when the three left Ulta, Appellant claims that he paid no attention to the "commotion." Further, even though the security tags would have been emitting loud beeps, Appellant noticed nothing wrong until Turner and Johnson started throwing the security tags out the window as Appellant drove.

Under the appropriate standards that we have outlined above, we have reviewed all the evidence in the light most favorable to the verdict and we determine that a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We overrule Appellant's sole issue on appeal.

We affirm the judgment of the trial court.

JIM R. WRIGHT
Senior Chief Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Wright[1]
Affirmed
Opinion delivered and filed September 29, 2021
Do not publish
[CR25]



---

[1] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.