

# NUMBER 13-22-00465-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**FRANCISCO TORRES,**                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

---

**On appeal from the 379th District Court
of Bexar County, Texas.**

---

# MEMORANDUM OPINION[1]

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Contreras**

A jury convicted appellant Francisco Torres for the offenses of: unlawful carrying of a firearm by a felon, a second-degree felony (Count 1); tampering with or fabricating physical evidence, a third-degree felony (Count 2); and unlawful possession of a firearm

---

[1] This case was transferred from the Fourth Court of Appeals in San Antonio to this Court pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

by a felon, a third-degree felony (Count 3). *See* Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. §§ 37.09, 46.02(e)(1), 46.04. The jury sentenced appellant to five, six, and four years' imprisonment on Counts 1, 2, and 3, respectively, with each sentence to run concurrently. By his sole issue on appeal, appellant contends that the evidence was legally insufficient to support his convictions. We affirm.

## I. Bᴀᴄᴋɢʀᴏᴜɴᴅ

A grand jury indicted appellant on July 12, 2022. Count 1 of the indictment alleged that on or about October 22, 2021, appellant

> intentionally, knowingly, and recklessly carr[ied] a handgun on or about his own person, and the defendant was not on the defendant's own premises or premises that were under the defendant's own control, and the defendant was not inside of or directly en route to a motor vehicle or watercraft that was owned by the defendant or under the defendant's control, and the defendant was prohibited from possessing a firearm under Section 46.04(a) of the Texas Penal Code, in that at the time of the commission of the charged offense, the defendant had been previously convicted of [a] felony offense . . . , and the defendant's possession of the firearm occurred after the fifth anniversary of the defendant's release from confinement following conviction of the felony, and the defendant possessed the firearm at 127 Henry Street, San Antonio, Texas, which was a location other than the premises at which the defendant lived.

Count 2 of the indictment alleged that on or about October 22, 2021, appellant,

> knowing that an investigation was in progress, to-wit: investigation in[]to the shooting of Ashley Olmos, did intentionally and knowingly destroy a thing, to-wit: evidence of the blood of Ashley Olmos located in the vehicle in which [she] was transported to the hospital, with intent to impair its verity, legibility, and availability as evidence in the investigation.

Count 3 of the indictment alleged that on or about October 22, 2021, appellant,

> having been convicted of [a] felony offense . . . , did intentionally and knowingly possess a firearm after the fifth anniversary of [his] release from confinement or release from supervision under community supervision, parole or mandatory supervision, following conviction of said felony at a location other than the premises at which [he] lived, to-wit: 127 Henry Street,

San Antonio, Texas.

Trial commenced on August 16, 2022. Most of the background facts come from a video recording of appellant's interview with police, which was admitted at trial as State's Exhibit 1 and played for the jury. On the morning of October 22, 2021, appellant was at a house located at 127 Henry Street in San Antonio, which was not his residence. At some point, a man showed up with a weapon that appellant desired to purchase. Ashley Olmos, appellant's girlfriend with whom he resided, arrived soon after. As appellant jubilantly displayed his new purchase to Olmos, he accidentally shot her in the leg.

Appellant frantically loaded Olmos into his vehicle to rush her to the hospital. The State played two 9-1-1 call recordings for the jury, admitted as State's Exhibits 2 and 3. In State's Exhibit 2, a male requested emergency medical services (EMS) to 127 Henry Street for a female who, he claimed, had been shot in the foot. Before EMS could respond, the caller informed the 9-1-1 operator that the female had been taken from the scene to a hospital. In State's Exhibit 3, a security officer from the Children's Hospital of San Antonio reported that a twenty-nine-year-old woman named Ashley Olmos was being treated for a gunshot wound to her thigh. He stated that somebody drove up to the hospital, dropped Olmos off, and then departed.

After leaving the hospital, appellant went to an unidentified house. Appellant informed an individual at that home what happened, and he was told to change his blood-covered clothing and that he may have accidentally killed Olmos. Donning a borrowed sweatshirt and gym shorts, appellant left, drove by 127 Henry Street, and wanted to admit his wrongdoing to a female officer on the scene, but he could not go through with it. He then drove to tell his mother about the incident and then to clean his car.

3

Osvaldo Escobedo testified that he returned to his home from a friend's house on October 22, 2021, and saw a car parked in front, which he learned was appellant's. Escobedo stated that appellant offered him $30 to clean the car's exterior. At some point, Escobedo saw that the car's back seats had been removed and were resting on the ground. He saw that there was blood on the seats and asked appellant what happened. Appellant informed Escobedo that he had accidentally shot his girlfriend. At that point, Escobedo "freaked out" and left his house.

Officer Kenneth Cortez of the San Antonio Police Department (SAPD) testified that on October 22, 2021, between 7:00 a.m. and 8:00 a.m., he was dispatched to 127 Henry Street for a shooting. Officer Cortez interviewed some bystanders who did not witness a shooting but heard the resulting commotion. Zareth Garay, who lived next door, testified that he "heard and saw" people yelling. Garay stated that two men were "trying to rush [a] lady to the hospital." Garay recalled, among other things, that the men were "genuinely trying" to help the injured woman. He heard one of the men apologize to the woman once or twice. Officer Cortez testified that another witness heard a gunshot followed by "a lot of screaming and yelling asking, Why did you shoot her? Why did you shoot your girl?"

Detective Dustin Kilpatrick of the SAPD testified that he received a call about a shooting at 127 Henry Street and when he got to that address, he saw signs of a crime scene, including blood in the house and on the back porch, but no victim. About twenty to thirty minutes later, SAPD received a call from Children's Hospital that somebody had arrived with a gunshot wound, so he went to investigate. When he arrived at the hospital, Detective Kilpatrick identified the victim as Olmos and spoke with the security officer who

4

called 9-1-1. Detective Kilpatrick also reviewed surveillance footage which showed a car pulling up to the hospital and a male dropping off Olmos. Detective Kilpatrick stated that he identified the vehicle's license plate number, and police then began searching for the car.

Detective Jason Reno of the SAPD testified that he arrived at 127 Henry Street at around 9:00 a.m. He received information that another SAPD detective spotted appellant's vehicle six to eight blocks away, so he went to surveil it. Detective Reno testified that he saw appellant and two others "going in and out of the vehicle quite a bit" and "moving things from the vehicle, putting them in the house, taking things from the house, [and] going back out to the vehicle." Reno stated that the men removed the vehicle's back seat and began vacuuming it and using cloths to wipe down its interior. Reno watched the men clean the vehicle for a couple of hours until SWAT arrived to arrest appellant.

After appellant was transported to SAPD headquarters, Detective Kilpatrick and his partner, Detective Chad Tudor, interviewed him. The detectives read appellant his *Miranda* rights, and appellant agreed to continue with the interview. After feigning ignorance as to why he was at SAPD headquarters, and after telling a few versions of what transpired, appellant finally admitted that he was holding a newly-purchased firearm when he accidentally shot Olmos in the leg. Appellant stated that he "know[s he] fu[-]ked up," and that he was "not supposed to have possession of a firearm." The State moved to admit appellant's judgment of conviction in a prior felony case from June 2014, and the trial court admitted it into evidence. When asked by the detectives why he cleaned his

5

car, appellant stated that he did not want Olmos to get upset at the sight of her blood in the vehicle.

The parties then rested their cases. The jury convicted appellant and sentenced him as stated above. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant argues "that the evidence is not sufficient to find him guilty of the offense of aggravated assault because the victim did not testify at trial, nor was any statement made by her offered." He continues: "In addition, no eyewitness testimony []or physical evidence was offered proving appellant acted with intent or was reckless." However, the offense of aggravated assault was not charged in this case. In his prayer for relief, appellant argues that the evidence was insufficient to support his convictions for unlawfully carrying and possessing a firearm and tampering with physical evidence. We will address those issues.

### A. Standard of Review & Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence 'in the light most favorable to the verdict' to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Delagarza v. State*, 635 S.W.3d 716, 723 (Tex. App.—Corpus Christi–Edinburg 2021, pet. ref'd) (quoting *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020)); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence and are not mere speculation. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim.

6

App. 2017); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony." *Delagarza*, 635 S.W.3d at 723 (first citing *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020); and then citing TEX. CODE CRIM. PROC. ANN. art. 38.04).

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

A hypothetically correct jury charge would instruct the jury that the elements of the offense of unlawful carrying of a weapon as charged in the indictment are: (1) appellant (2) intentionally, knowingly, or recklessly carries on or about his . . . person a handgun (3) while not on his own premises or premises under his control or "inside of or directly en route to a motor vehicle or watercraft" which he owns and (4) "at the time of the offense, was prohibited from possessing a firearm under [§] 46.04(a)" of the penal code. *See* TEX. PENAL CODE ANN. § 46.02(a-7). In turn, § 46.04(a) of the penal code, relating to the unlawful possession of a firearm, provides that "[a] person who has been convicted of a felony commits an offense if he possesses a firearm . . . [after] the fifth anniversary of [his]

7

release from confinement following conviction of the felony . . . at any location other than the premises at which the person lives." *Id.* § 46.04(a)(2). "'Possession' means actual care, custody, control, or management." *Id.* § 1.07(a)(39).

A hypothetically correct jury charge consistent with the indictment would instruct the jury that the elements of the offense of tampering with or fabricating physical evidence are: (1) appellant, (2) knowing that an investigation or official proceeding was in progress, (3) destroyed evidence of Olmos's blood (4) with intent to impair its verity, legibility, or availability as evidence in the investigation. *See id.* § 37.09(a).

## B.    Analysis

After properly reciting the facts and the law relevant to a sufficiency of the evidence review, the following is the extent of appellant's briefing:

> Appellant contends the evidence is legally insufficient because the witness (Ashley Olmos) did not testify as to [a]ppellant being in possession of a gun to shoot her. (See [Reporter's Record] Index List of Witnesses, in which Ms. Olmos is not listed as having testified)[.]
>
> Appellant is not guilty of possession, since he was only looking at the gun to make a potential purchase. There is no witness to any possession, or shooting.
>
> There is no evidence to support [a]ppellant tampering with evidence if the incident was strictly an accident and he was not in possession of any gun.

Nowhere in his brief does appellant recite the statutes under which he was convicted or "the essential elements of the offense[s]" that he claims the State failed to prove beyond a reasonable doubt. *See Curlee*, 620 S.W.3d at 778. And nowhere in his brief does appellant cite to relevant authority supporting his propositions that the absence of testimony from one of multiple witnesses is insufficient to support a conviction; that

8

appellant could not have possessed a firearm when he was "only looking at the gun to make a potential purchase"; or that a defendant cannot be convicted of tampering with evidence if the underlying incident was an accident. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Accordingly, we overrule appellant's issue on appeal for insufficient briefing. *See id.*; *Hall v. State*, 663 S.W.3d 15, 35 (Tex. Crim. App. 2021) (overruling appellants issue on appeal because he did "not cite any legal authority in support of this contention," and the court would "not make [a]ppellant's argument for him"); *Hinds v. State*, 627 S.W.3d 803, 805 (Tex. App.—Corpus Christi–Edinburg 2021) (overruling appellant's arguments for insufficient briefing). Even if error were preserved, we conclude that sufficient evidence exists in the record to support appellants convictions.

### 1. There is Legally Sufficient Evidence in the Record to Support Appellant's Convictions on Counts 1 and 3

Legally sufficient evidence supports appellant's convictions on Counts 1 and 3. Appellant admitted to Detectives Kilpatrick and Tudor that he bought the firearm at 127 Henry Street. Appellant stated that he lived at a separate address with Olmos. Appellant admitted that the gun was in his hands when he accidentally shot Olmos. Appellant admitted that he "fu[-]ked up" and was "not supposed to have possession of a firearm," and a judgment for a prior felony conviction was admitted at trial. Olmos was admitted to the hospital with a gunshot wound to her leg, supporting the contention that the use of a firearm was involved in the offenses alleged. Officers and detectives investigating the scene at 127 Henry Street saw a lot of blood inside the house and on the back porch, supporting the contention that Olmos was shot at a residence that was not her or

9

appellant's own. And Officer Cortez testified that one witness informed him they heard somebody yell "why did you shoot your girl?" That statement supports the contention that appellant, Olmos's boyfriend, was the shooter. This evidence sufficed to prove appellant guilty of the offenses charged in Counts 1 and 3 beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. §§ 46.02(a-7), 46.04(a); *Curlee*, 620 S.W.3d at 778; *Delagarza*, 635 S.W.3d at 723.

### 2. There is Legally Sufficient Evidence in the Record to Support Appellant's Conviction on Count 2

The record also includes sufficient evidence to support appellant's conviction for tampering with physical evidence. *See* TEX. PENAL CODE ANN. § 37.09(a). First, appellant admitted in his interview with the detectives that he knew if Olmos died, he might have been arrested. Next, appellant dropped off his wounded girlfriend at the hospital, but did not stick around. Instead, he departed to an unknown house where he was told to change out of his blood-covered clothing, which he did. Appellant stated that he drove by 127 Henry Street, saw a female officer there, and wanted to admit his wrongdoing but did not. And later, appellant spent hours cleaning his car. A reasonable juror could have concluded from this evidence that appellant knew an investigation was underway and attempted to destroy evidence to impede the investigation. *See id.* Although appellant stated to the detectives that he cleaned his car because he did not want Olmos to become upset by the sight of blood in the vehicle upon her discharge from the hospital, the jury was free to discount his testimony. *See Hernandez v. State*, 161 S.W.3d 491, 501 (Tex. Crim. App. 2005) ("[A] factfinder may disbelieve some or all of a witness's testimony, even when that testimony is uncontradicted.").

10

Legally sufficient evidence exists in the record to prove appellant's conviction in Count 2 beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 37.09(a); *Curlee*, 620 S.W.3d at 778; *Villa*, 514 S.W.3d at 232; *Delagarza*, 635 S.W.3d at 723.

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
15th day of June, 2023.