

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00069-CR

———————————————

JEFFREY DWAYNE BLANKENSHIP, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 271st District Court
Jack County, Texas
Trial Court No. 4839

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion on Remand by Chief Justice Sudderth

**MEMORANDUM OPINION ON REMAND**

Appellant Jeffrey Blankenship appeals his conviction for aggravated robbery. *See* Texas Penal Code Ann. § 29.03(a). On appeal, Blankenship argues in two issues that the evidence is insufficient to support his conviction and that the trial court erred by denying his motion for directed verdict. We will affirm.

## I. Procedural Background

After the briefs were filed in this appeal, Blankenship entered into a plea bargain with the State to which he pleaded guilty to nonaggravated robbery. The trial court issued a new judgment, and—on Blankenship's request— we dismissed his appeal. *Blankenship v. State*, No. 02-19-00069, 2020 WL 1057322, at *1 (Tex. App.—Fort Worth Mar. 5, 2020, no pet.) (mem. op., not designated for publication). Blankenship later filed an application for postconviction habeas relief in the Texas Court of Criminal Appeals. That court held that the postconviction plea bargain was void, and it reformed the trial court's judgment to reinstate the aggravated robbery conviction. *Ex parte Blankenship*, No. WR-93,001-01, 2023 WL 2670554, at *1 (Tex. Crim. App. Mar. 29, 2023) (not designated for publication). The Court of Criminal Appeals further reinstated Blankenship's appeal as of February 21, 2020, when both Blankenship's and the State's briefs had been filed. *Id.* On May 1, 2023, we reinstated Blankenship's appeal of his conviction for aggravated robbery. Although given an opportunity to file supplemental briefing, Blankenship's counsel informed this court

2

that no additional briefing would be filed.  Therefore, we will address the issues in Blankenship's brief filed on November 5, 2019.

## II.  Factual Background

Blankenship testified that he drove Damien Hooten to Shakeel Ahmed's property to help Hooten with a fencing job.  Ahmed, who was 68 years-old at the time of trial, testified that when the men knocked on his door, Hooten stated that he was the nephew of Ahmed's neighbor, and they just wanted to stop by and say hello.  Ahmed invited them in for a beer.  Once inside the home, Hooten related that he knew Ahmed's nephew, Faraz Anwar (Fugi), and that Hooten had helped Fugi remove some guns from Ahmed's home while Ahmed was out of town.[1]

At some point, Hooten went outside to smoke, and when he returned, Ahmed heard a "click" that he recognized as a handgun "dry firing" on an empty chamber.  As Ahmed turned toward Hooten, Hooten chambered another round.  According to Ahmed, during this episode, Blankenship remained focused on Ahmed, "cover[ing]" him and preparing to "pounce" if he made a move.  Hooten ordered Ahmed to stand up, put his hands up, and walk toward the sofa.  Ahmed complied.  As Ahmed walked to the sofa, he asked Blankenship if he was "a part of all this."  According to Ahmed, Blankenship replied "yes"; according to Blankenship, he did not answer.  At trial, Blankenship did admit, however, that at the very least, he did not answer "no" to the

---

[1]Ahmed testified that he collects guns and that Fugi knew where he kept his guns.

3

question. Ahmed believed that Blankenship was definitely "in on the whole gun thing."

After Hooten demanded all of Ahmed's guns, Ahmed offered to give him his guns but asked that Hooten not hurt him. Hooten kept his gun pointed at Ahmed as he and Blankenship escorted Ahmed to the room where he kept his guns. Along the way, Hooten told Blankenship to grab Ahmed's phone. According to Ahmed, not only did Blankenship take his phone but he also took $1,900 in cash from Ahmed's wallet that was sitting next to his phone. At some point along the way, Ahmed managed to get to the back door, open it, and take off running. Although Hooten shot at him several times, Ahmed was able to get to his ATV and drive to an area where he called 911 to report the incident.

Certain aspects of Blankenship's testimony were consistent with Ahmed's. However, Blankenship claimed that he knew nothing about Fugi and Hooten having taken guns from Ahmed's home prior to that day. Blankenship also testified that he was unaware that Hooten had brought a gun with him, but he agreed that after Hooten returned inside from smoking, he pointed a gun at Ahmed and told Ahmed to get up and put his hands up. Blankenship also testified that he did not want to be involved and that he contemplated leaving. After Ahmed escaped and took off running, Blankenship claimed that he left Hooten behind, got into his pickup, drove

4

away, but then hit a big ditch that disabled his pickup.[2]  At that point Blankenship claims he fled on foot, and when he finally reached an area that had cell service, he sent text messages to his friends asking for help.

The State introduced as evidence Blankenship's phone records, and portions of those text messages were read to the jury.  Included in the phone records were text messages between Blankenship and some of his friends.  In the messages, Blankenship texted that he was "f - - ked" and that he was going to prison for the rest of his life.  In those messages, Blankenship also stated that he needed an attorney and that he had $1,100.[3]  And although Blankenship testified at trial that he did not know Fugi, his phone records revealed that Blankenship also tried to call Fugi after the robbery and that Fugi would not talk to him.

### III.  Sufficiency of the Evidence

Blankenship argues in his first issue that the evidence is insufficient to support his conviction.  In his second issue, he argues that the trial court erred by denying his motion for directed verdict because the evidence was insufficient to support the required mens rea.  Because a motion for directed verdict is essentially an evidentiary-

---

[2]Blankenship's pickup was recovered on Ahmed's property.

[3]Blankenship's niece testified that it was not normal for Blankenship to have that much money.

5

sufficiency challenge, we will analyze both issues together. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990).

## A. Standard of Review

In our evidentiary-sufficiency review, we view all evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

## B. Applicable Law

A person commits the offense of aggravated robbery if he (1) unlawfully appropriates property with intent to deprive the owner of the property, (2) and with intent to obtain or maintain control over the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death, and (3) either causes serious bodily injury to another, uses or exhibits a deadly weapon, or causes bodily injury to another person or threatens or places another in fear of imminent bodily injury or death, if the person is 65 years of age or older. Tex. Penal Code Ann. §§ 29.02(a), 29.03(a), 31.03(a).

A person is criminally responsible for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code Ann. § 7.02(a). Section 7.02(b) provides:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id.* at 7.02(b).

## IV. Discussion

Blankenship argues that there is no evidence he intended to commit a felony, because Hooten, not Blankenship, was the primary actor in the offense. But the jury

7

was authorized to convict Blankenship of aggravated robbery if they found that Hooten committed the offense and that Blankenship acted as a party to it.

Viewed in the light most favorable to the verdict, the evidence is sufficient to show that Blankenship acted with intent to assist Hooten in the commission of aggravated robbery. The record shows that Hooten and Fugi had previously taken guns from Ahmed and that Hooten was there to get the remaining guns. And although Blankenship claimed that he did not know Fugi, there was cell phone evidence to the contrary.

The jury heard Ahmed's testimony that Blankenship aided Hooten by providing "cover" to prevent Ahmed from moving and by standing between Ahmed and the front door and thus blocking Ahmed's escape. And, according to Ahmed, when asked if he was "a part of all this," Blankenship replied "yes." Finally, Ahmed testified that Blankenship took his phone and his money. Although Blankenship disputed Ahmed's testimony, the factfinder judged the credibility of the evidence and was not obliged to believe him. *Martin*, 635 S.W.3d at 679. Therefore, we hold that the evidence is sufficient to support Blankenship's conviction for aggravated robbery. We overrule Blankenship's first and second issues.

## V. Conclusion

Having overruled Blankenship's two issues on appeal, we affirm the trial court's judgment.

8

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 30, 2023