

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00317-CR

———————————————

JAMES AUDIE SEXTON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1837516

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Kerr

**MEMORANDUM OPINION**

Appellant James Audie Sexton appeals his conviction for online solicitation of a minor younger than 14 years of age, a second-degree offense, *see* Tex. Penal Code Ann. § 33.021(b)(1), (f), enhanced by a habitual-offender paragraph, for which the jury assessed his punishment at 65 years' imprisonment, *see id.* § 12.42(d). In one issue, Sexton contends that insufficient evidence shows that his text messages were "sexually explicit," as required by Section 33.021(b)(1) and as defined by Sections 33.021(a)(3) and 43.25(a)(2) of the Texas Penal Code. *See id.* §§ 33.021(a)(3), 43.25(a)(2). We hold that the evidence was sufficient, overrule Sexton's issue, and affirm the trial court's judgment.

## I. Background

Because Sexton limits his argument to whether sufficient evidence supports the finding that his text messages were sexually explicit, we limit our review to that contention.

### A. Definition of "Sexually Explicit"

In the context of online solicitation of a minor, *see id.* § 33.021(b)(1), "'[s]exually explicit' means any communication, language, or material, including a photographic or video image, that relates to or describes sexual conduct, as defined by Section 43.25." *Id.* § 33.021(a)(3). In turn, "'[s]exual conduct' means sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality,

2

masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola." *Id.* § 43.25(a)(2).

**B. The Texts and Testimony**

Below is a sampling of the texts that Sexton sent the complainant and of some of the complainant's responses:

- "You know. [Y]ou are now in my dreams. I am dreaming of you. What do we do about that? How about you? Thinking of you is both excruciating and exhilarating! I know it's wrong but I still want to ravish you."

- "You are sooo delectable. Yummy!"

- "[P]lease send me some revealing pics. I hope I can stand it. But, if you can[.]"

- "About to kill me thinking of you. I told you that you are a Hottie!"

- "Just looking at you. It drive[s me] crazy. Only being able to look. God I want you."

  - The complainant answered, "I know[.] I love a lot and I care about you[,] but you know I can't do that because my dad will kill me if he finds out[.]"

- "I love you. I hunger for you."

- "Do you have any idea what I want to do to you?"

- "God, I want you so bad. Do you know what I mean?" and "I want to ravish you."

  - The complainant replied, "[Y]es[,] I know what you mean[.] I have dreams about escap[]ing and go[ing] to your place[.]"

- "I found a gal who looks like you on xnxx.com. [K]ind of fulfilling of my fantasies. But not as good as you. Just wishful thinking. No one is a beautiful as you. No one."

3

- The complainant responded, "I can't even go into it because my dad set my account on kid."

- "I want to kiss you. I mean really kiss you. And more. But . . . ."

  - The complainant remarked, "I want to also."

- "Please send me pics of you. Maybe before or after a shower or bath. Please! Okay?"

At trial, the complainant testified, without elaboration, that she thought that some of Sexton's text messages were sexual. Sexton testified at trial, too, but denied having meant anything sexual in his texts.

According to Sexton, the complainant made advances toward him, and he tried to discourage her. He explained, "[S]he had . . . an idea that shocked me, but flattered me too. And -- but I told her, as soon as I heard about . . . it, I told her, 'What you're thinking about can't happen. It can never be.'" Sexton stated that he advised the complainant to stop: "Stop and think about what you're -- you know, what you're saying, what you're doing. And like I said, then I was a 65-year-old man, and you're a 13-year-old girl." He summarized his position: "I did not solicit anything. I didn't want to have sex with her. I didn't solicit sex with her. That's it."

## II. Sufficiency of the Evidence

### A. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

4

307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608. Jurors may choose to believe or disbelieve all, some, or none of the evidence presented. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021).

### B. Discussion

We hold that a rational factfinder could have found beyond a reasonable doubt that Sexton's text messages to the complainant related to sexual conduct as required

5

by Section 33.021(a)(3) and as defined by Section 43.25(a)(2). The text messages evinced Sexton's wish to have sexual contact or sexual intercourse with the complainant[1] and his desire to see lewd or licentious photographs of her and were thus sexually explicit.[2] *See* Tex. Penal Code Ann. §§ 33.021(a)(3), 43.25(a)(2); *see also Queeman*, 520 S.W.3d at 622. *See generally Gess v. State*, No. 07-24-00097-CR, 2024 WL 4599402, at 1 n.1, *2 (Tex. App.—Amarillo Oct. 28, 2024, no pet.) (mem. op., not designated for publication) (finding a Section 33.021(b)(1) violation with a record containing, among more descriptive sexual texts, texts reading, "I would go slow with you," "I want to introduce you to everything," and "I want to be your first for everything."). Although Sexton denied having had any sexual intentions, the jury did not have to believe him. *See Edward*, 635 S.W.3d at 655.

We overrule Sexton's sole issue.

### III. Conclusion

Having overruled Sexton's sole issue, we affirm the trial court's judgment.

---

[1]The parties dispute what Sexton meant by "ravish" in two of his texts. Regardless of how the jury understood Sexton's use of the word, it had many other texts to consider, and nothing in Sexton's use of the word "ravish" would have likely disabused the jury of Sexton's overall intent.

[2]During the State's opening statement, the prosecutor asserted, "I believe . . . it will be clear the nature of these text messages. While he does never come out and say, 'I want to have sex with you,' I believe you will understand in the full context of the conversation what he meant when he was communicating with [the complainant]."

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 14, 2025