**Opinion filed October 5, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00253-CR

_____

## DEMETRIUS SHAUN LEE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 2**
**Midland County, Texas**
**Trial Court Cause No. CR165593**

## O P I N I O N

A jury found Demetrius Shaun Lee guilty of abuse of official capacity, a Class A misdemeanor. *See* TEX. PENAL CODE 39.02(a)(2), (c)(3) (West 2016). The trial court sentenced Appellant to confinement for a term of one year in the Midland County jail and assessed a fine of $4,000. However, the trial court suspended the confinement portion of the sentence and placed Appellant on community supervision for a term of eighteen months. In his sole issue on appeal, Appellant contends that

there was insufficient evidence to support his conviction. We reverse and render a judgment of acquittal.

*Background Facts*

Appellant was a police officer serving with the Midland Police Department. The Midland Police Department has multiple software programs installed on department computers that allow police officers to conduct searches for a person's driving records and involvements with the Midland Police Department. Police officers can conduct a search for a person's information by using the person's name, driver's license number, and/or license plate number. These searches allow police officers to view information such as a person's address, height, weight, vehicle ownership and insurance information, history of driving-related convictions, and whether a person has been involved in a locally reported crime as a victim, suspect, or witness.

The software programs are only accessible via department computers and cannot be accessed on personal devices. A police officer must use his specific login credentials to access the software programs. In turn, each entry a police officer makes is recorded in the officer's "unit" history. Police officers are required to receive training on the use of the software programs and are instructed that using the software programs for personal reasons is prohibited.

Around May 22, 2018, Sergeant Brian Taylor began an internal affairs investigation of Appellant's unit history. Sergeant Taylor reviewed Appellant's unit history to determine whether Appellant had accessed anyone's information for personal reasons. Sergeant Taylor's investigation revealed that, between January 1, 2017, and April 26, 2018, Appellant ran a total of twenty-five searches for information on six individuals, doing so with no legitimate law enforcement purpose. Sergeant Taylor determined that Appellant personally knew these six individuals through either dating relationships or the police department.

2

Sergeant Patrick Bostick, the Chief Investigator at the District Attorney's Office, conducted a recorded interview with Appellant that was admitted into evidence and played for the jury. During the interview, Appellant said that three of the six individuals had asked him to access their information and that he thought running a search for an individual's information upon their request was permitted.

Four of the six individuals whose information was accessed by Appellant testified at trial. Only Courtney Cler, Appellant's wife, confirmed that she asked Appellant to access her driving record. Cler testified that she gave Appellant her driver's license number and asked him to see whether a ticket she had received in Florida was visible on her driving record. The other three testifying individuals stated that they had not given Appellant permission to access their information.

In an effort to prove value, the State offered a purchase order for eight laptops. However, the State did not prove whether Appellant's in-vehicle laptop was one of the computers listed in the purchase order. Jennifer Frescaz, the City of Midland's Chief Information Officer, confirmed that Appellant's in-vehicle laptop was not damaged in any way upon its return and that none of the searches at issue caused the laptop to depreciate in value. Officer Jacob Churchwell and Sergeant Taylor testified that they were unaware of any charges associated with an officer's use of the software programs.

After the State rested its case-in-chief, Appellant filed a motion for directed verdict. Appellant argued, among other points, that the State did not introduce evidence establishing that (1) Appellant acted with an intent to obtain a benefit, harm, or defraud another; or (2) the value of the use of the computer(s) accessed by Appellant was between $750 and $2,500. The trial court overruled Appellant's motion for directed verdict. Appellant did not present any witnesses during the guilt/innocence phase of trial.

*Analysis*

In his sole issue on appeal, Appellant challenges the sufficiency of the evidence with respect to multiple elements of the offense for which he was convicted. We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Issasi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State¸* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not

point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

In its second and final superseding information, the State charged Appellant with a violation of Section 39.02(a)(2) of the Texas Penal Code.[1] PENAL § 39.02(a)(2). A person commits an offense under this section if:

> with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly . . . misuses government property, services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment.

*Id*. The punishment for an offense under subsection (a)(2) ranges from a Class C misdemeanor to a first-degree felony, depending upon "the value of the use of the thing misused." *Id.* § 39.02(c). Here, the State's information alleged that Appellant misused a government-owned computer or computers, and the value of the use of the computer or computers was "$750 or more but less than $2,500," a Class A misdemeanor. *See id.* § 39.02(c)(3).

---

[1]In its information, the State charged Appellant in two paragraphs, one that alleged that Appellant committed the offense of abuse of official capacity as described in Section 39.02(a)(1) (violation of law relating to the public servant's office or employment) and one that alleged Appellant committed the offense as described in Section 39.02(a)(2) (misuse of government property, services, personnel, or thing of value belonging to the government). *See* PENAL § 39.02(a). However, the State acknowledged that it did not offer any evidence in support of the paragraph alleging a violation of Section 39.02(a)(1) and withdrew that paragraph of its information; therefore, the trial court did not include it in its charge.

*Value*

We note at the outset a concession made at oral argument in this case by the State with respect to the evidence on value. At trial, the State took the position that, because the computer searches were run on computers only available to a police officer, the value of the use of those computers was synonymous with the value of the computers. At oral argument, the State conceded that the value of the computers did not comport with the value of their use. Accordingly, the State suggested at oral argument that Appellant's conviction should be reformed to a Class C misdemeanor. *See id*. at 39.02(c)(1).

*Intent to Obtain a Benefit*

Appellant asserts there was insufficient evidence that he intended to obtain a benefit when conducting the searches at issue. The Texas Penal Code defines the term "benefit" as "anything reasonably regarded as economic gain or advantage, including benefit to any other person in whose welfare the beneficiary is interested." PENAL § 1.07(a)(7) (West 2021).

Sergeant Bostick testified that he did not receive any information indicating that Appellant had accessed any information to gain an economic benefit for himself. Notwithstanding this testimony, the State's contention in its closing argument was that Cler received a benefit when Appellant ran a search for her driver's license information. The State argued that outstanding tickets are "very expensive" and that Cler would have been "worried about how much it's going to cost" to pay her outstanding ticket. Thus, the State contended, the benefit conferred on Cler when Appellant accessed her information was that Cler "[got] to know whether or not she ha[d] to spend money on these things." The State elaborates on this point on appeal, arguing that "[f]inding out about the ticket would have conferred Ms. Cler an economic benefit because it would have saved her time from having to use other

means to find out about the status of the ticket. This is time that she could have used to work to make money."

The State's "time is money" argument is unpersuasive. The only evidence regarding Cler's employment was Cler's testimony that she did not know whether she was at work when she asked Appellant to run the search. The State did not establish where Cler was employed, how many hours she worked per week, or whether she was a salaried employee or paid hourly. No evidence was presented regarding Cler's intentions when she asked Appellant to conduct the search, how she could have alternatively accessed her information, or whether she expected to save time in having Appellant access her information for her.

Further, cases prosecuted under Section 39.02(a) tend to have clear, readily ascertainable economic gains at issue. *See, e.g.*, *Becker-Ross v. State*, 595 S.W.3d 261, 268–69 (Tex. App.—Texarkana 2020, no pet.) (holding that a rational jury could have found beyond a reasonable doubt that the highest-paid city official was pressuring the city marshal to enforce an illegal traffic ticket quota in order to protect her salary, which was paid for using city revenue); *Megason v. State*, 19 S.W.3d 883, 886 (Tex. App.—Texarkana 2000, pet. ref'd) (county clerk wrote her children's moving company two checks for a total of $4,300 for work that they did not do and subsequently deposited funds from the checks into her personal bank account); *Talamantez v. State*, 829 S.W.2d 174, 177 (Tex. Crim. App. 1992) (county commissioner used county equipment to improve realty belonging to his children "at county expense"); *State ex rel. Hightower v. Smith*, 671 S.W.2d 32 (Tex. 1984) (sheriff used county vehicles and fuel to monitor an apartment complex and received a rent-free apartment within the complex in return).

As a result of Appellant's conduct, Cler gained knowledge that an outstanding ticket in Florida was not visible on her Texas driving record. This might have provided Cler some sort of benefit within the plain meaning of the word, but the

7

State did not establish a nexus between the knowledge Cler gained and any corresponding *economic* gain or advantage to Appellant as required by the Penal Code. *See* PENAL §§ 1.07(a)(7), 39.02(a). As such, no rational jury could have found beyond a reasonable doubt that Appellant intended to obtain a benefit or confer a benefit upon Cler within the meaning of the statute. *See id.*; *Jackson*, 443 U.S. at 319; *Issasi*, 330 S.W.3d a 638.

*Intent to Harm*

Appellant also asserts that there is no evidence that he intended to harm any of the six individuals when conducting searches for their information. The Texas Penal Code defines "harm" as "anything reasonably regarded as a loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." PENAL § 1.07(a)(25).

Sergeant Taylor testified that he spoke with the six individuals and that there was no indication that Appellant accessed their information to "harm or blackmail" them. Sergeant Bostick testified that he did not receive information indicating that Appellant was intending to "hurt" the individuals by accessing their information. None of the four individuals who testified at trial stated that Appellant intended to cause them a loss, disadvantage, or injury when he accessed their information. Rather, they testified about how they knew Appellant, whether they had asked Appellant to access their information, and whether Appellant informed them that he had accessed their information.

None of the four individuals that testified said that they actually experienced a loss, disadvantage, or injury. *See* PENAL § 1.07(a)(25). Another individual who did not testify at trial previously told an investigator that Appellant told her that he had accessed her information because she was going to be watching his child, but her statement did not indicate that she experienced a loss, disadvantage, or injury

8

because of the search. Rather, the individual stated that she thought Appellant was joking with her.

During Sergeant Bostick's interview with Appellant, Appellant provided explanations as to why he ran some of the searches at issue. Specifically, Appellant told Sergeant Bostick that he searched for Sergeant Georvarsey Mitchell's information to find his address. Appellant stated that he wanted to stop by Sergeant Mitchell's home to speak with him about "something going on at the P.D." Appellant asserted that he searched for Sabrina Sanchez, Stephanie Reyes, and Cler's information because they had asked him to access their driving records. Appellant did not provide an explanation as to why he searched for information for Loralea Ray and Bernice Rodriguez. In summary, the evidence at trial did not demonstrate that Appellant had a malicious intent behind any of the searches. Rather, the evidence that the State presented only demonstrated that Appellant's intentions were unclear.

The State contends on appeal that "the mere act" of accessing these individuals' private information demonstrates an intent to harm because the information "is intended to be confidential unless voluntarily disclosed." However, the State fails to define whether a privacy violation is a loss, disadvantage, or injury. *See id*. At trial, the State asserted in its closing argument that the individuals who did not give Appellant permission to access their information were harmed because "now [Appellant] gets to know things about them that puts them at a disadvantage." Yet the State did not explain *how* Appellant's knowledge of this information would put any of those individuals at a disadvantage. Further, the issue before us is not whether Appellant had permission to access this information, but whether there was sufficient evidence that Appellant intended to harm at least one person in doing so. Whether the jury chose to believe that Appellant had permission to access this

information or not, there was no evidence connecting Appellant's conduct to an intent to harm any of these individuals.

As such, no rational juror could have found beyond a reasonable doubt that Appellant intended to harm any of the six individuals when he conducted searches for their information. *See Brooks*, 323 S.W.3d at 899; *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778.

*Intent to Defraud*

Appellant also contends there was no evidence that he intended to defraud anyone. During closing arguments, the State told the jury to "focus on the first two [elements]" because it did not present any evidence of Appellant's intent to defraud. The State again concedes on appeal that no evidence regarding an intent to defraud was presented at trial. We also find no evidence in the record that Appellant intended to defraud anyone.

In summary, there was no evidence to support Appellant's conviction under Section 39.02(a)(2) of the Texas Penal Code. Accordingly, we sustain Appellant's sole issue on appeal.

*This Court's Ruling*

We reverse the judgment of the trial court and render a judgment of acquittal.


JOHN M. BAILEY
CHIEF JUSTICE


October 5, 2023

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.