**Opinion filed May 30, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00081-CR

_____

## DEREK ALAN HOLDRIDGE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 15438-D**

## M E M O R A N D U M   O P I N I O N

Appellant, Derek Alan Holdridge, was indicted for three offenses: (1) aggravated assault against Rodney Russell (a second-degree felony offense); (2) aggravated assault against Scott Adair (a second-degree felony offense); and (3) criminal mischief (a state jail felony). *See* TEX. PENAL CODE ANN. §§ 22.02(a)(2), (b)(1), 28.03(a)(1), (b)(4)(D) (West Supp. 2023). The jury acquitted Appellant of both aggravated-assault offenses but convicted him of criminal

mischief and assessed his punishment at confinement for 365 days in the State Jail Division of the Texas Department of Criminal Justice. Because the jury recommended that Appellant's sentence be probated, the trial court suspended Appellant's sentence and placed him on community supervision for four years.

On appeal, Appellant raises a single issue: that the evidence is insufficient to support his conviction for criminal mischief. We affirm.

## I.  *Factual Background*

On the morning of January 26, 2022, Appellant and his brother-in-law, Matthew Lee Mason, were engaged in "target practice" while on Appellant's property—they were discharging various guns on the property. At some point, Mason received a call from his father; he left for a period of time but returned to Appellant's property later that same day.

While Mason was gone, Appellant continued to discharge weapons on his property. Appellant testified that he retrieved a rifle from his pickup that he used to shoot at an insulator and a transformer, striking the transformer multiple times. The insulator was located on a pole on the perimeter of Appellant's property, and the transformer was located on a transformer pole on Appellant's property near his residence. After he shot the transformer, Appellant noticed that mineral oil was draining from the transformer through the bullet holes and onto his pickup, which was parked under the transformer. Appellant further testified that he lost power at his home sometime between when Mason left and returned to the property. Appellant's testimony was further corroborated by his wife, Amanda Holdridge, who stated that she heard Appellant discharging a gun when the power outage occurred. The record shows that their home video surveillance system recorded and captured Appellant discharging his rifle at 11:05 a.m.—which was approximately the same time that the electricity to their residence was interrupted.

Lynn Hays, the assistant control operations manager for Taylor Electric Cooperative, oversaw after-hours and weekend calls and handled power outages for Taylor Electric. Hays testified that at 11:14 a.m. on January 26, 2022, a member of Taylor Electric called to report a power outage and stated that "neighbors [are] shooting like crazy and hoping he didn't hit anything." Hays further testified that the member's phone call was recorded in an outage management system report that was created by Taylor Electric, and that this report identified which "fuse" in the system was no longer functioning. Once the report was generated, Hays dispatched master electrician Rodney Russell and senior meter tech Scott Adair to the reported location to assess the source of the power outage.

Russell testified that, after he arrived at Appellant's property, he noticed that there was a missing insulator on the power line pole near the perimeter of the property. Russell then continued driving, which was away from Appellant's property, and determined that the "line fuse" at that location was open, indicating that there was a power outage. Russell and Adair then drove back toward Appellant's residence to continue their investigation into the source of the power outage; on the way, they stopped near Appellant's property to inspect the power lines and power poles, including the transformer pole.

Conflicting testimony was presented concerning what occurred when Russell and Adair were assessing the cause of the power outage near Appellant's property. Appellant testified that he did not fire his weapon at anyone that day. Russell and Adair both testified that they saw a man on the property holding a firearm, and that the man fired two shots in the air before he "leveled out" his rifle and pointed it at them. Russell further testified that he heard a third gunshot as he drove away from the property. After driving away from the property, Russell called Hays and reported that someone had fired shots at them while they were investigating the source of the power outage; Hays contacted 9-1-1 to report this. During their subsequent

3

investigation, police officers took photographs of Appellant's property, the damaged transformer, and the damaged insulator.

Following law enforcement's investigation, Taylor Electric repaired the damaged insulator and transformer. In assessing what caused the power outage, Taylor Electric's director of engineering, Wade Hatch, opined that he inspected the transformer and believed that the damage it sustained would cause a malfunction, resulting in a loss of power. Adair testified that the "high-side bushing" was no longer inside the transformer, likely due to internal damage, and he further observed several bullet holes in the transformer. The cost to repair the damaged insulator and transformer was $2,000.

## II. *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the Jackson standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007); *Garcia*, 667 S.W.3d at 762 ("[A] reviewing court does not sit as a thirteenth juror and may not

substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence."). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Garcia*, 667 S.W.3d at 761. Therefore, if the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Garcia,* 667 S.W.3d at 762.

We treat direct and circumstantial evidence equally under this standard. *Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish the defendant's guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *Lee*, 676 S.W.3d at 915. Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, we may not use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Rather, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

III. *Analysis*

In his sole issue, Appellant contends that the evidence is insufficient to support his conviction for criminal mischief. As relevant to this appeal, a person commits the offense of criminal mischief if, without the effective consent of the owner, "he intentionally or knowingly damages or destroys the tangible property of the owner." PENAL § 28.03(a)(1). The offense is a state jail felony if the amount of

pecuniary loss is less than $30,000 and the actor causes complete or partial impairment or interruption of property that is used to supply power to the public. *Id.* § 28.03(b)(4)(D). In this regard, Appellant argues that the evidence is insufficient for a rational trier of fact to determine beyond a reasonable doubt that his actions of shooting the transformer caused the impairment to Taylor Electric's power supply or the interruption of the electric service.

We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* The State alleged in the indictment that Appellant "intentionally and knowingly damage[d] or destroy[ed] tangible property," specifically a transformer, by shooting it with a firearm, without the effective consent of the owner of the property, Taylor Electric, which resulted in pecuniary loss to Taylor Electric's property of less than $30,000. The indictment further alleged that Appellant's acts of shooting the transformer "caused impairment or interruption of public power supply by preventing electrical service through the transformer."

Appellant does not advance any argument or present any evidence to dispute that (1) Taylor Electric was the owner of the transformer, (2) he shot the transformer without Taylor Electric's permission, or (3) that the pecuniary loss to Taylor Electric's property as a result of Appellant's conduct was less than $30,000. As such, sufficient evidence exists to establish these elements of criminal mischief. *See* PENAL §§ 1.07(a)(35), 28.03(a)(1), (b)(4)(D); *see also Milo v. State*, 748 S.W.2d 614, 617 (Tex. App.—San Antonio 1988, no pet.).

6

Appellant concedes that the evidence indicates that Appellant's act of shooting the *insulator* caused a fuse to "blow," which resulted in the impairment or interruption of the electrical power supply; however, he argues that the evidence is insufficient to support his conviction because the State did not present any evidence that his acts of shooting the *transformer* caused the impairment or interruption of Taylor Electric's public power supply as alleged in the indictment. Appellant points to the testimony of the Taylor Electric employees, which he claims establishes that the damage to the insulator, rather than to the transformer, was the cause of the impairment or interruption of Taylor Electric's power supply.

Appellant highlights testimony from Russell and Adair about the damage to the insulator. Russell testified that, after observing that the insulator was on the ground, he speculated that the missing insulator could have "caus[ed] the fuse to blow," resulting in the power outage. Adair also testified that he noticed that the insulator was missing and that a wire was "off to the side." However, Appellant fails to note that both Russell and Adair also testified about their observations of the damaged transformer. Russell and Adair both observed several bullet holes in the transformer; Russell noted that the transformer was "shot all to pieces," and Adair testified that the "high-side bushing" was no longer inside the transformer—indicating that the transformer was damaged internally. Adair also stated that the damage to the transformer was unusual and that he had not seen this type of damage in the past. Appellant also overlooks Hatch's testimony that (1) he inspected the transformer and observed that it had been shot multiple times, (2) mineral oil had leaked from it, (3) there was damage to the interior lining, and (4) there were bullet fragments inside the transformer. From his inspection, Hatch determined that the damage to the transformer was caused "by an impact of some kind" and that this impact would cause the transformer to malfunction and result in a loss of power.

While some of the evidence that Appellant refers to could arguably suggest that the shots to the insulator potentially caused the impairment of the public power supply, there is other evidence indicating that the shots that Appellant fired at the *transformer* caused the power outage. This evidence included: (1) Appellant's admission that, while his first shot that struck the transformer was unintentional, he intended to shoot both the insulator and the transformer, stating that he "destroyed" the transformer; (2) Appellant's testimony that he "guess[ed]" the power outage on January 26, 2022 was caused by him shooting the transformer; (3) various photographs of the damaged transformer; (4) the testimony of Russell and Adair concerning the damage that they observed to the transformer; (5) Hatch's testimony that the damage to the transformer could have caused the power outage; (6) Appellant's home video surveillance system depicting Appellant discharging his rifle at 11:05 a.m. on January 26, 2022, just before the surveillance system lost power; (7) testimony from Amanda that the home video surveillance system ceased working when the power outage occurred at their residence and that Appellant was discharging his gun when the power outage occurred; and (8) testimony that the cost of repairs incurred by Taylor Electric for the damaged transformer and insulator was $2,000.

In this case, as in all cases, the jury may believe all, some, or none of any witness's testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Reyes v. State*, 465 S.W.3d 801, 805 (Tex. App.—Eastland 2015, pet. ref'd) (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)); *see Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. As the trier of fact, it is the jury's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 326; *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. Therefore, when the evidence supports conflicting inferences, we presume

8

that the jury, as the factfinder, resolved any conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

We have reviewed the evidence in the light most favorable to the jury's verdict, as we must, and we conclude that the record before us contains sufficient evidence from which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant was guilty of criminal mischief as charged in the indictment.

Accordingly, we overrule Appellant's sole issue on appeal.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER
JUSTICE

May 30, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

9