Opinion filed October 3, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00219-CR
_____

## MARCUS LANCE HATTENBACH, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. 16495**

### M E M O R A N D U M   O P I N I O N

Appellant, Marcus Lance Hattenbach, was convicted by a jury for unauthorized use of a vehicle, a state jail felony.[1] *See* TEX. PENAL CODE ANN. § 31.07 (West 2016). Appellant elected for the jury to assess his punishment. After

---

[1]Appellant was also charged by a separate indictment with the first-degree felony offense of aggravated assault with a deadly weapon against the same victim; the cases were consolidated for trial. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West Supp. 2023). The jury found him not guilty of that offense.

considering the punishment evidence, the jury found the two enhancement allegations to be "true," and assessed Appellant's punishment at imprisonment in the Institutional Division of the Texas Department of Criminal Justice for twenty years and a $10,000 fine. *Id.* § 12.425(b) (West 2019). The trial court sentenced Appellant accordingly.

In his sole issue on appeal, Appellant challenges the sufficiency of the evidence to support his conviction. We affirm.

## I. *Factual Background*

Victoria Gale Golleher testified about her relationship with Appellant, which began in September 2022. At that time, Golleher was living in Big Spring, Texas, and Appellant was living in Ruidoso, New Mexico. Golleher, who owned a Toyota 4Runner and a Dodge pickup, testified that she and Appellant would use one of her vehicles on the multiple occasions that they traveled between Big Spring and Ruidoso. Regarding Appellant's use of her vehicles, Golleher recalled permitting Appellant to drive her Toyota to Ruidoso when she was sick, and to drive her pickup without her on one occasion when he helped her move furniture.

Golleher testified that on October 22, 2022, Appellant was staying at her home in Big Spring. That evening, they visited an acquaintance, Frederick Heckler, at his house. According to Golleher, Appellant and Frederick had been drinking that night. When Appellant and Golleher left Frederick's house, Appellant, despite having consumed alcohol, "insisted" that he drive Golleher home in her pickup. Appellant initially drove to Golleher's home; however, later that evening, Appellant told Golleher that he wanted to "drive around" in her pickup. Golleher reluctantly rode with Appellant for "three or four hours" while he consumed "multiple beers." Golleher testified that as they drove around, she "kept telling [Appellant] to take [her] home"; he eventually did so around 2:00 a.m. When they returned to Golleher's home, Appellant told her that "[h]e wanted to leave . . . to get more beer."

2

Golleher then told Appellant that he was not allowed to drive her pickup and demanded her keys. Appellant threw the keys at her, then attacked her with a "red-handled" razor-blade knife. At some point during the altercation, Golleher escaped and ran to her neighbor's house, leaving the keys to her vehicles behind.

Meredith Skaggs, Golleher's neighbor, testified that at around 6:00 a.m. on October 23, she was awakened by Golleher ringing her doorbell. When Skaggs opened the front door, Golleher was calling 9-1-1 on her cell phone. Golleher told Skaggs that "she'd been beaten up," and Skaggs observed multiple cuts and other visible injuries on Golleher's body. Shortly thereafter, law enforcement and emergency medical personnel arrived at Skaggs's residence and treated Golleher's injuries. Golleher was then transported to the hospital in Big Spring for further treatment.

Howard County Sheriff's Deputy Richard Dyer testified that he inspected Golleher's home and noticed that several vehicles were parked in front of the home, including Golleher's pickup. Deputy Dyer later interviewed Golleher at the hospital, and Golleher told him that Appellant had assaulted her from 3:00 a.m. to 6:00 a.m. that morning. Several law enforcement officers from the Howard County Sheriff's Office, including Deputy Dyer, Deputy Dominic Rocha, and Sergeant Ralph Rollins, met Golleher at her home after she was released from the hospital that afternoon. When they arrived there, Deputy Dyer observed that the pickup he had seen in Golleher's driveway earlier that day was gone. Golleher told Deputy Rocha that "[Appellant] had stolen the [pickup] and that he had no permission to have taken the [pickup]." Deputy Rocha then contacted dispatch to report that Golleher's pickup had been stolen.

Approximately three or four hours after Golleher's pickup had been reported stolen, Deputy Rocha and Sergeant Rollins located the stolen pickup at Brian Heckler's residence, the son of Frederick Heckler. Sergeant Rollins testified that he

3

saw three males standing by this house, two of whom he knew "by the last name of Heckler." The officers then asked the third male to identify himself, but he refused. Believing that the unidentified male was Appellant, the officers arrested him for outstanding warrants. The officers then searched the interior of the pickup and found a wallet that contained identification belonging to Appellant. The officers later returned the stolen pickup to Golleher.

Frederick Heckler and Christopher Newton testified about Appellant's use of Golleher's pickup. Frederick testified that Appellant drove up to his house in a pickup with a female on October 22, and that he did not believe the pickup belonged to Appellant. Frederick also testified that Appellant drove up to his house again the following day in the same pickup, but Appellant was alone. Newton testified that he and Appellant helped Golleher move furniture on October 13, and he recalled Appellant driving the pickup that day with Golleher's consent. Newton confirmed that the stolen pickup was the same pickup that he saw Appellant drive on October 13.

Appellant testified that he began a relationship with Golleher in September 2022, and that Golleher visited him in Ruidoso around September 16. Appellant confirmed that he and Golleher drove back and forth from Ruidoso and Big Spring on multiple occasions. Appellant also testified that he drove Golleher's vehicles during the time they were together, and that he had Golleher's permission to drive her vehicles, including her pickup, without her being present.

Appellant's version of what occurred on October 22 differed from Golleher's and Frederick's testimony. Appellant recounted that, around 1:00 p.m. on October 22, he and Golleher "kicked around the house," and he "worked on her house some." Around 4:00 p.m., Appellant "went for a ride around Big Spring," and he brought a friend to Golleher's home around 7:00 p.m. Appellant and Golleher then drove to the grocery store around 10:00 p.m. Around midnight, Appellant asked

4

Golleher if she wanted to go for a ride; she agreed, and they drove around Big Spring in her pickup—Appellant drove. Appellant testified that they had been drinking and he initiated a conversation about them ending their relationship as they drove around. After this conversation ended, Appellant and Golleher returned to Golleher's home around 1:00 a.m., and he went to sleep.

Appellant testified that he woke up around 6:00 a.m. on October 23 to find Golleher lying in bed next to a "pile of pills." Because he believed that Golleher had overdosed on prescription medication, he intended to drive Golleher to the hospital in one of her vehicles. At some point as he was moving Golleher from her house to "her car," she fled. Appellant testified that he then went inside her house and was there when the officers knocked on the front door. After the officers left, Appellant drove away in Golleher's pickup. Appellant testified that he did not leave Golleher's house with the intent of driving her pickup without her permission; rather, he stated that he was waiting for Golleher to call him to pick her up.

## II. *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Lee v. State*, 676 S.W.3d 912,

915 (Tex. App.—Eastland 2023, no pet.). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007); *Garcia*, 667 S.W.3d at 762 ("[A] reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence."). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Garcia*, 667 S.W.3d at 761 (quoting *Jackson*, 443 U.S. at 319). Therefore, if the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Garcia*, 667 S.W.3d at 762.

We treat direct and circumstantial evidence equally under this standard. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish the defendant's guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *Lee*, 676 S.W.3d at 915. Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, we may not use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Rather, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

6

Finally, we measure the sufficiency of the evidence by the elements of the charged offense as defined by the hypothetically correct charge for the case. *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In this regard, to determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt under the *Jackson* standard, we compare the elements of the offense to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik*, 953 S.W.2d at 240). The hypothetically correct charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

### III. *Analysis*

In his sole issue on appeal, Appellant argues that the evidence is legally insufficient to support his conviction for unauthorized use of a vehicle, because nothing shows that he *knowingly* operated Golleher's pickup without her consent. In support of his argument, Appellant contends that circumstantial evidence shows his lack of knowledge because: (1) he and Golleher were in a relationship and he had driven Golleher's pickup on multiple occasions—both when she was and was not present; (2) his personal possessions were at Golleher's house when he was arrested; and (3) in light of his acquittal of the aggravated-assault offense, the jury could not have reasonably believed Golleher's testimony that Appellant operated her pickup without her permission.

As relevant to this appeal, a person commits the offense of unauthorized use of a vehicle if the person intentionally or knowingly operates a motor vehicle without the effective consent of the vehicle's owner. PENAL § 31.07. The accused must be aware that the operation of the vehicle is without the owner's consent. *Gardner v.*

7

*State*, 780 S.W.2d 259, 262–63 (Tex. Crim. App. 1989); *Edwards v. State*, 178 S.W.3d 139, 145 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Thus, operating a vehicle is unlawful only if the accused is aware that his operation of the vehicle is without the owner's consent. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). Evidence that a vehicle owner did not consent to the accused operating the owner's vehicle can be sufficient to support a finding that the accused knew he did not have consent to do so. *Id.* at 604–05.

Here, Golleher testified that she did not give Appellant permission to operate her pickup on October 23. Deputy Rocha testified that Golleher also told law enforcement that Appellant did not have permission to operate her pickup on October 23—the day she reported it stolen. This evidence, without more, is sufficient to support the jury's finding that Appellant knew that he operated the pickup without Golleher's effective consent. *See id.*; *Brumfield v. State*, 641 S.W.3d 568, 574–75 (Tex. App.—Tyler 2022, pet. ref'd). Nevertheless, additional evidence supports the jury's finding of guilt and Appellant's conviction.

Golleher testified that after she and Appellant left Frederick's house on October 22, she repeatedly told Appellant to "take [her] home" and "[that] he didn't need to be driving." Around 2:00 a.m. on October 23, she told Appellant he was not allowed to drive her pickup, and she asked Appellant to give her the keys to her vehicles. Although Appellant testified that he had Golleher's "implied" consent to operate her vehicles without her presence on multiple occasions—including on October 23—in this case, as in all cases, the jury may believe all, some, or none of any witness's testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Reyes v. State*, 465 S.W.3d 801, 805 (Tex. App.—Eastland 2015, pet. ref'd) (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)); *see Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. As the trier of fact, it is the jury's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw

reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 326; *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. As such, while the jury may not have believed beyond a reasonable doubt that Appellant committed aggravated assault against Golleher, the jury was free to believe the testimony of Golleher and others concerning Appellant's unauthorized use of her pickup. *See Jackson*, 443 U.S. at 319, 326.

We have reviewed the evidence in the light most favorable to the jury's verdict, and we conclude that the record before us contains sufficient evidence from which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant committed the offense of unauthorized use of a vehicle as charged in the indictment. *See* PENAL § 31.07; *Jackson*, 443 U.S. at 319.

Accordingly, we overrule Appellant's sole issue on appeal.

IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


October 3, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.